ACCEPTED
01-14-00931-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/7/2015 2:50:05 PM
CHRISTOPHER PRINE
CLERK

01-14-00931-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/7/2015 2:50:05 PM
CHRISTOPHER A. PRINE
Clerk

COUNTRY TITLE, L.L.C.

Appellant,

v.

MORENIKE JAIYEOBA

Appellee.

On Appeal from the 268th Judicial
District of Fort Bend County, Texas
Cause No. 07-DCV-159705

**APPELLANT'S BRIEF**

**LeClairRyan**
James J. McConn, Jr.
james.mcconn@leclairryan.com
1233 West Loop South, Suite 1000
Houston, Texas  77027
Telephone:  713-654-1111
Facsimile:    713-650-0027
**ATTORNEY FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF THE PARTIES

| **Appellant** | **Counsel for Appellant** |
|---|---|
| Country Title, L.L.C. | LeClairRyan<br>James J. McConn, Jr.<br>Bar No. 13439700<br>james.mcconn@leclairryan.com<br>1233 West Loop South, Suite 1000<br>Houston, Texas  77027<br>Telephone:  713-654-1111<br>Facsimile:    713-650-0027 |
| **Appellee** | **Attorney for Appellee** |
| Morenike Jaiyeoba | Teltschik-Grubbs PLLC<br>L.T. Butch Bradt<br>Bar No. 02841600<br>14015 Southwest Freeway Suite 4<br>Sugar Land, Texas 77478<br>Telephone: 281-201-0700<br>Facsimile: 281-201-1202 |

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES ...............................................................i

TABLE OF CONTENTS ......................................................................ii

TABLE OF AUTHORITIES...............................................................iii

STATEMENT OF THE CASE ............................................................vi

STATEMENT REGARDING ORAL ARGUMENT ..............................vii

STATEMENT REGARDING THE RECORD.....................................vii

ISSUES PRESENTED .....................................................................viii

STATEMENT OF FACTS .................................................................. 2

SUMMARY OF THE ARGUMENT ...................................................12

ARGUMENT ...................................................................................13

    I.      Standards of Review. ...........................................................13

    II.    The Trial Court erred in entering judgment on Plaintiff's gross-negligence claim. (Issue #1)........................14

        A.    There can be no finding of gross-negligence without an accompanying finding of ordinary negligence.....................................................14

        B.    Plaintiff's ordinary negligence claim was barred by the economic-loss rule. ...............................15

        C.    Plaintiff waived her negligence claim by failing to move for a directed verdict or submit instructions on the issue................................20

    III.   The Trial Court erred in allowing Plaintiff to introduce evidence of settlement negotiations. (Issue #2.) ............................................................................24

    IV.   The Trial Court erred in entering judgment on the jury's award for credit-reputation damages....................28

PRAYER ........................................................................................33

CERTIFICATE OF SERVICE.............................................................34

CERTIFICATE OF COMPLIANCE.....................................................35

# TABLE OF AUTHORITIES

**Cases**

*Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 14-13-00480-CV, 2015 WL 1245548 (Tex. App.—Houston [14th Dist.] Mar. 17, 2015, no. pet. h.) ....................................................... 13

*Bank of Tex. v. VR Electric, Inc.*, 276 S.W.3d 671 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) ............................................... 23

*Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ................................. 16

*Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839 (Tex. App.—Austin 2003, no pet.) ................................... 24

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716 (Tex. 2014) ....................................................... 16

*Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459 (Tex. App.—Fort Worth 2004, no pet.) ........................... 31

*Doe v. Messina*, 349 S.W.3d 797 (Tex.App.–Houston [14th Dist.] 2011, pet. denied) ..................................................... 15

*EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857 (Tex. App. Dallas [5th Dist.] 2008, no pet.) ........................................... 17

*First Franklin Fin. Corp. v. United Title Co., Inc.*, 08-CV-01866-PAB-MEH, 2009 WL 3698526 (D. Colo. Nov. 5, 2009) ................................................................ 17, 18, 19

*Gary E. Patterson & Associates, P.C. v. Holub*, 264 S.W.3d 180 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ..................... 20

*Isenhower v. State*, 261 S.W.3d 168 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ............................................... 13

*Jones v. Blume*, 196 S.W.3d 440 (Tex. App.—Dallas 2006) ................... 26

*Ju v. Mark*, 1:06CV320 (JCC), 2006 WL 1647266 (E.D. Va. June 13, 2006) ................................................... 17, 18, 19

*LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234 (Tex. 2014) .................................................................. 15

*LeBlanc v. Lange*, 365 S.W.3d 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.)................................................................27

*Lehman Bros. Holdings, Inc. v. Hirota*, 806CV2030T24MSS, 2007 WL 1471690 (M.D. Fla. May 21, 2007)................................. 18, 19

*Lerma v. Border Demolition & Envtl., Inc.* ___ S.W.3d ___, 08-12-00105-CV, 2015 WL 737989 (Tex. App.—El Paso Feb. 20, 2015, pet. filed)................................................................25

*MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51 (Tex. App.—San Antonio 2005, pet. denied)................................................................25

*Murphy v. Gruber*, 241 S.W.3d 689 (Tex. App.—Dallas 2007, pet. denied)................................................................22

*Nowzaradan v. Ryans*, 347 S.W.3d 734 (Tex.App.–Houston [14th Dist.] 2011, no pet.) ................................................................ 14, 15

*Physicians & Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d 657 (Tex. App.—Corpus Christi 1988, writ denied)..........................22

*Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189 (Tex. 1998)................................................................29

*Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011)................................................................16

*St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51 (Tex. 1998) ................................................................29, 30

*Stauffacher v. Coaduum Capital Fund* 1, LLC, 344 S.W.3d 584 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ............ 17, 21

*Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178 (Tex.App.– Houston [1st Dist.] 2012, pet. denied) ..............................15

*Texas Mut. Ins. Co. v. Morris*, 287 S.W.3d 401 (Tex. App.—Houston [14th Dist.] 2009), *rev'd on unrelated grounds*, 383 S.W.3d 146 (Tex. 2012) ................................................................31

*THPD, Inc. v. Cont'l Imports, Inc.*, 260 S.W.3d 593 (Tex. App.—Austin 2008, no pet.)................................................................23

*Victory Park Mobile Home Park v. Booher*, 05-12-01057-CV,
2014 WL 1017512 (Tex. App.—Dallas Feb. 26, 2014, no
pet.)...........................................................................................20

*Yeng v. Zou*, 407 S.W.3d 485 (Tex. App.—Houston [14th
Dist.] 2013, no pet.)...............................................................14

**<u>Other Authorities</u>**

Restatement (Third) of Torts, Tent. Draft 1 § 5 cmt. A..........................16

**<u>Rules</u>**

Tex. R. Civ. P. 279 ..........................................................................23

Tex. R. Evid. 408 ............................................................................24

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case and Parties:* | Plaintiff contracted to purchase a home and hired Country Title to serve as the escrow agent. Country Title failed to record the deeds properly and failed to transfer the loan payoff to the seller's mortgagee. The seller's mortgagee, in turn, foreclosed on the property. Plaintiff sued Country Title for breach of contract, negligence, gross negligence, and breach of fiduciary duty. |
| *Trial Court:* | The Honorable Brady G. Elliott, 268th Judicial District Court of Fort Bend County, Texas. |
| *Trial Court Disposition* | The parties stipulated to a breach of contract by Country Title, LLC, to repayment of closing costs of $1,300, and to lost rental of $1,800. The matter was tried to a jury. At the close of evidence, the trial court directed a verdict on Plaintiff's breach-of-fiduciary-duty and negligence claims. The jury returned a verdict of $30,000 in credit-reputation damage. The jury also found that Country Title had been grossly negligent, necessitating a further trial on exemplary damages. After a separate trial, the jury returned a verdict of $100,000 for exemplary damages. The trial court entered final judgment for (1) actual damages of $32,800.00, (2) pre-judgment interest of $13,102.03, and (3) punitive damages of $100,000. |

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests that this Court grant oral argument, which it believes will assist the Court in evaluating the legal issues presented in this appeal.

## STATEMENT REGARDING THE RECORD

The Reporters Record comprises eight volumes, which Appellant will refer to as (1 RR) through (8 RR), respectively.  Volume 8 of the Reporter's Record contains all exhibits that were admitted at trial.  As it is not paginated, Appellant will cite trial exhibits by exhibit number.  The Clerk's Record comprises a single volume, which Appellant will refer to as (CR).  All references to documents in the Appendices will be referenced as (App.)

## ISSUES PRESENTED

**Issue 1:** Whether the Trial Court erred in entering judgment on the Jury's award of $100,000 in punitive damages for gross negligence?

> Sub-Issue A: Whether the economic-loss rule barred Plaintiff's gross-negligence claim, where the allegedly breached duties were exclusively contractual in origin?

> Sub-Issue B: Whether Plaintiff waived her negligence and gross-negligence claims by failing to request a ordinary-negligence charge before the jury retired to consider Country Title's liability for gross negligence?

**Issue 2:** Whether the Trial Court erred in allowing Plaintiff to introduce evidence of settlement discussions, including evidence that Country Title had requested a release and indemnity from Plaintiff as part of a proposed settlement?

**Issue 3:** Whether the evidence was sufficient to support the jury's award of $30,000 in credit-reputation damages where Plaintiff presented no evidence that the damage to her credit reputation caused her any financial injury and, *a fortiori*, presented no evidence to quantify that injury?

01-14-00931-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

COUNTRY TITLE, L.L.C.

Appellant,

v.

MORENIKE JAIYEOBA

Appellee.

On Appeal from the 268th Judicial
District of Fort Bend County, Texas
Cause No. 07-DCV-159705

**APPELLANT'S BRIEF**

TO THE HONORABLE COURT OF APPEALS:

Appellant Country Title, L.L.C. ("Country Title"), submits this Appellant's Brief and respectfully requests that this Honorable Court reverse the judgment of the trial court and set aside the jury's award of $100,000 for exemplary damages and $30,000 for credit-reputation damages.

1

## STATEMENT OF FACTS

In this action, Plaintiff Morenike Jaiyeoba ("Plaintiff") alleges that Country Title, acting as escrow agent in a real estate transaction, failed to discharge its obligation to record certain deeds and to transfer certain funds. (CR 8-12.)

The property—a residential dwelling at 1626 Brookstone Lane in Sugar Land, Texas ("Property")—was formerly owned by Ayodeji and Folashade Alli, who had rented it out to tenants (3 RR at 122:20; Pl.'s Ex. 2.) In mid-2005, the Allis were seriously delinquent in their payments to their lender and mortgagee, World Savings Bank, FSB ("World Savings"). (3 RR at 123:21-124:3, 125:5-8.)

Plaintiff was interested in purchasing the Property as an investment. (3 RR at 121:11-18; 4 RR at 48:17-20.) The Allis agreed to sell it to her for $190,000. (Pl.'s Ex. 2.) Plaintiff borrowed money from EMC Mortgage Corporation ("EMC"), to finance the purchase. (3 RR at 126:3-10.) Closing occurred on August 22, 2005. (Pl's Ex. 2.)

Defendant Country Title served as title insurer and escrow agent for the transaction. (CR 8-12; 4 RR at 391-5.) In its role as escrow agent, Country Title agreed, among other things, to record the

2

necessary deeds and to deliver a payoff amount of $134,943.21 to the Allis' lender, World Savings.  (Pl.'s Ex. 2; Pl.'s Ex. 6.)

This did not happen.  (Pl.'s Ex. 6; 3 RR at 134:4-7.)  Although Country Title sent the appropriate documents to the Fort Bend County courthouse for recording, the courthouse refused to accept them.  (5 RR at 49:10-13.)  And although Country Title attempted to wire the funds to World Savings, the wire did not go through.  (3 RR at 129:16-17, 5 RR at 35:6-24; Pl.'s Ex. 6; Def.'s Ex. 10.)

The Allis' former tenants remained in the Property after the closing, with Plaintiff taking over the lease and accepting rental payments from them.  (3 RR at 129:24-130:8.)  Meanwhile, however, World Bank neither received the payoff amount for the Allis' loan nor received any further monthly payments on that loan.  (Pl.'s Ex. 14.) Unaware of the Allis' sale to Plaintiff, World Bank instituted foreclosure.  (Pl.'s Ex. 6 & 14.)  On December 6, 2005, World Bank purchased the Property for itself at the foreclosure sale.  (Pl.'s Ex. 6.)

A week after acquiring the Property, World Bank evicted the tenants.  (3 RR at 130:9-131:9; Pl.'s Ex. 4.)  When the tenants alerted Plaintiff to this, Plaintiff asked Country Title why they were being

3

evicted. (3 RR at 130:17-131:21.) Only then realizing its error, Country Title recorded the warranty deed from the Allis and the deeds of trust for Plaintiff's lenders. (5 RR at 6:23-7:21) This was too late, and the recordation complicated matters further. As noted above, the Property already had been sold to World Savings. Having acquired the property, World Savings was now trying to find a buyer. (Pl.'s Ex. 22.) The late filing of the deeds—dead letters because neither Plaintiff nor the Allis had title—impeded World Savings' efforts to sell the home. (*Id.*) To remove the cloud on the Property's title, World Savings filed a quiet title action against Plaintiff. (Pl.'s Ex. 26.)

Around this time, Plaintiff retained counsel, who demanded that Country Title deliver clear title to the Property. (Pl.'s Ex. 8.) To that end, Country Title contacted World Savings and offered to pay the $134,943.21 it still held in escrow (representing the payoff amount on the Allis' loan). (Pl.'s Ex. 6.) But by then World Bank was entertaining other offers for the Property for significantly more than that—around $192,500. (Pl.'s Ex. 11; 5 RR at 18:7-11.) Country Title failed to acquire the property from World Savings. (5 RR at 18:13-14.) Because the transaction did not close, Country Title paid over $198,000 to Plaintiff's

4

lender, EMC, to satisfy the loans that she had taken out to pay for the Property. (4 RR at 52:5-8; 5 RR at 17:14-16; Pl. Ex. 39, 41.) So although Plaintiff no longer owned the Property; she did not owe any money on it, either.

Before Country Title paid off these loans, however, Plaintiff failed to make certain of her monthly $1600 payments to EMC. (3 RR at 136:6-138:16.) This was because, after World Savings evicted her tenants, she no longer was receiving rent payments. (3 RR at 137:23-138:16.) Plaintiff's repayment delinquency was reported to credit-rating organizations. (Pl.'s Ex. 34.) At trial, Plaintiff claimed that these missed payments impaired her credit reputation and prevented her from obtaining a $197,000 loan. (Tr. 4 RR at 41:12-45:24.)

During the course of these events, Plaintiff's counsel and Country Title's counsel exchanged correspondence in an unsuccessful attempt resolve the matter. (Pl.'s Ex. 8, 11, 17, and 20.) One of the issues was indemnification. (5 RR at 15:21-24.) As part of a settlement, Country Title wanted Plaintiff to release it from all claims and to indemnify Country Title against any future claims that might be brought against

5

it arising out of the incident. *Id.* The parties were unable to reach an agreement, leading to the present litigation.

*Evidence of Settlement Negotiations at Trial*

Plaintiff's Amended Petition asserts, inter alia, claims for breach of contract, breach of fiduciary duty, negligence, and gross negligence. (CR at 52.) The case was tried in late July 2014 on the issues of negligence, gross negligence, breach of fiduciary duty, and damages.

Before trial, Country Title moved to exclude evidence of its negotiations with Plaintiff to resolve the matter. (CR at 205.) Plaintiff opposed this motion, arguing that the evidence was germane to her breach-of-fiduciary-duty claim. In particular, Plaintiff claimed that: (1) Country Title's status as closing agent meant that it owed Plaintiff a fiduciary duty, and (2) as a fiduciary, Country Title could not ask for indemnity when negotiating a resolution to the dispute. (1 RR at 48:14-52:1.) The Trial Court reserved ruling on the motion in limine, stating that it wanted to "see how these facts play out" at trial. (1 RR at 52:22-53:11; CR at 212.) At trial, it allowed Plaintiff to introduce extensive evidence of the negotiations between her counsel and counsel for Country Title. This included the following exhibits:

6

**Pl's Ex. 8:** A January 27, 2006 demand letter from Plaintiff's counsel, Steven Belzer, to Country Title. The letter discusses Country Title's efforts to resolve the matter to date and demands additional action.

**Pl's Ex. 17:** A February 14, 2006 letter from Country Title's counsel, Jim McConn, to Belzer requesting information from Plaintiff to facilitate transfer of title to her.

**Pl's Ex. 20:** A February 22, 2006 letter from Belzer to Country Title's counsel, Jim McConn, demanding that Country Title purchase the Property from World Savings and demanding compensation for lost rental and attorney's fees.

Plaintiff also introduced live testimony concerning the settlement negotiations. She elicited testimony from Thomas Berry, Country Title's chief operating officer, that—as part of the negotiations to have Country Title purchase the Property from World Savings—Country Title asked for a release from Plaintiff:

> Q    Mr. Berry, you know that Country Title also requested a release from Ms. Jaiyeoba before it would purchase the property from World Savings Bank, don't you
>
> A    I know we requested a release. I do not believe it was conditional.

(5 RR at 16:21-17:1.) Later, Plaintiff's counsel asked Berry whether Country Title requested indemnity from Plaintiff in order to resolve the matter:

7

Q:	Do you know why Country Title asked for an indemnification from Ms. Jaiyeoba?

A	Specifically, I do not.

Q	But to your knowledge, they asked for one, didn't they?

A	To my knowledge, we did.

Q	And a release?

A	And a release, correct.

(5 RR at 19:3-10.) Again, the request for a release and indemnity occurred during negotiations between Plaintiff's counsel and Defense counsel about how to resolve the matter.

Plaintiff's counsel highlighted these facts during closing argument. Thus, he used the request for a release and indemnity—a common request in settlement negotiations—to portray Country Title as indifferent to Plaintiff's plight:

> Country Title doesn't care. Country Title wants a release. They want an indemnification. They want to be protected from Mr. Alli. They want Ms. Jaiyeoba to protect them, to reimburse their costs.

(5 RR at 72:13-16.) He repeats this later in his argument:

> [N]ot only do they do it wrong up front, they do it wrong at the end. They go and record the deed, get Ms. Jaiyeoba sued. And, okay, so it's going to damage her credit. We want a release and indemnification to—they're really not entitled to.

8

(5 RR at 74:23-75:3.)  And again in his rebuttal argument:

> They're a title company, and they know at the title company
> World Savings Bank is going to sue.  They know that the
> tenant's leaving, and they don't do anything to stop it except
> ask for a release and indemnification.

(5 RR at 86:19-23.)  The settlement negotiations were, in short, a key part of Plaintiff's jury arguments.

### Findings of the Trial Court and the Jury

At the close of evidence, Plaintiff moved for a directed verdict on her claim for breach of fiduciary duty.  (5 RR at 51:8-11.)  As grounds for this motion, Plaintiff's counsel cited the facts that (1) Country Title had not properly recorded the deeds or transferred the funds to World Savings, and (2) Country Title "ask[ed] for a release and an indemnification," thereby "putting their self-interest ahead of Ms. Jaiyeoba's."  (5 RR at 56:9-11.)  The Trial Court granted Plaintiff's motion.  (5 RR at 58:10.)

The Trial Court's proposed charge included an instruction on gross negligence but no corresponding instruction on ordinary negligence. (5 RR at 62:2-5.)  Country Title objected to this, arguing that there could be no finding of gross negligence without a predicate finding of ordinary negligence.  (*Id.*)  Plaintiff, however, argued that breach of

9

fiduciary duty could stand in for ordinary negligence as the basis for a gross negligence finding: "the breach of fiduciary duty is sufficient to get punitive damages." (5 RR at 62:7-15.) The Trial Court agreed with Plaintiff, and instructed the jury on gross negligence without first giving an ordinary negligence instruction. (App. 2.)

Country Title also objected to Plaintiff's instruction on credit-reputation damages. It reiterated its pre-trial motion objection, which noted that Plaintiff had not shown any documented loss resulting from impaired credit. (5 RR at 61:19-20; CR 54-56.) And Country Title objected to the content of Plaintiff's credit-reputation instruction. (5 RR 61:1-8.) The Trial Court overruled these objections.

The charge to the jury asked them to answer three questions: (1) the amount, if any, of Plaintiff's credit-reputation damages, (2) whether Country Title had acted with malice, and (3) whether Country Title had acted with gross negligence. (App. 2.) The jury awarded $30,000 in credit-reputation damages and found gross negligence, but it did not find malice. (App. 2.) The matter then proceeded to a trial on exemplary damages for gross negligence.

10

At this point, Country Title reiterated its objection to the jury's having been instructed on the gross negligence issue without a corresponding negligence instruction. (5 RR at 94:23-24.; 6 RR at 9:7-11.) Although the jury already had found liability on gross negligence, the Trial Court formally reopened the evidence on negligence and found that Plaintiff had established negligence as a matter of law. (6 RR at 17:9-10, 20:23-21:4.) Country Title objected to this, arguing that (1) it was inappropriate to reopen evidence on that issue, and (2) any negligence claim would be barred by the economic-loss rule. (6 RR at 16:10-18, 18:23-25.) After a trial on exemplary damages, the jury awarded Plaintiff an additional $100,000. (App. 3.) The Trial Court entered judgment on the jury's verdicts. (App. 1.)

This appeal followed.

## SUMMARY OF THE ARGUMENT

The Trial Court erred in entering judgment on the jury's award of $100,000 in exemplary damages because Plaintiff's gross negligence claim was barred by the economic-loss rule. This doctrine bars negligence claims—and, hence, gross-negligence claims—where the duties alleged to have been breached arise solely out of a contract between the parties. In the present case, Plaintiff asserts that Country Title breached its duty to record documents and transfer funds relating to the sale of the Property. Those duties, however, arose solely out of the parties' oral contract for Country Title to perform closing services. Accordingly, the breaches cannot support a gross negligence claim. So the jury's award of $100,000 for exemplary damages must be set aside.

The Trial Court further erred in allowing Plaintiff to introduce evidence of settlement discussions between the parties—including Country Title's request for indemnity and a release. Under Rule of Evidence 408, those discussions were inadmissible. The repeated introduction of this evidence was prejudicial, as it formed one of the cornerstones of Plaintiff's closing arguments. By allowing evidence of

settlement negotiations into evidence, the Trial Court committed reversible error.

Finally, the Trial Court erred in allowing the issue of credit-reputation damages go to the jury. Although there was some evidence that Plaintiff' was later unable to obtain a loan, there was no evidence that (1) the loan denial was caused by Country Title's actions, or (2) Plaintiff was economically harmed by being unable to obtain the loan in question. Plaintiff's evidence was insufficient as a matter of law to support an award of damages for injury to credit reputation.

ARGUMENT

## I. Standards of Review.

Issue #1 presents a pure question of law, which this Court reviews *de novo*. *Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 14-13-00480-CV, 2015 WL 1245548, at *3 (Tex. App.—Houston [14th Dist.] Mar. 17, 2015, no. pet. h.). Issue #2 concerns the admissibility of evidence, which this Court reviews for abuse of discretion. *Isenhower v. State*, 261 S.W.3d 168, 178 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Issue #3 concerns the sufficiency of evidence, during the consideration of which this Court views the facts in the light most favorable to the challenged finding and indulges every reasonable inference that would

13

support it. *Yeng v. Zou*, 407 S.W.3d 485, 489 (Tex. App.—Houston [14th Dist.] 2013, no pet.)

## II. The Trial Court erred in entering judgment on Plaintiff's gross-negligence claim. (Issue #1)

The jury's $100,000 exemplary-damages verdict was predicated on its finding of gross negligence. But, as detailed below, Plaintiff's gross negligence claim fails as a matter of law. Thus, the Trial Court should not have submitted the issue of exemplary damages to the jury and should not have entered judgment on the jury's $100,000 in exemplary damages.

### A. There can be no finding of gross-negligence without an accompanying finding of ordinary negligence.

Plaintiff's gross-negligence claim fails because it lacks a necessary predicate—Plaintiff does not have a viable underlying claim for ordinary negligence. "'[N]egligence and gross negligence are not separable causes of action but are inextricably entwined.'" *Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex.App.–Houston [14th Dist.] 2011, no pet.) (quoting *Ford Motor Co v. Miles*, 967 S.W.2d 377, 390 (Tex. 1998)). Gross negligence is not a freestanding claim; it is a measure of the extent to which the defendant breached the duty of care.

14

*Id.* at 740. It follows that a gross negligence claim cannot stand in the absence of an established claim for ordinary negligence. *See Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178 (Tex.App.– Houston [1st Dist.] 2012, pet. denied) ("Texas law is well settled that, in order to prevail on a claim for gross negligence, a plaintiff must first show ordinary negligence."); *Doe v. Messina*, 349 S.W.3d 797 (Tex.App.– Houston [14th Dist.] 2011, pet. denied) (agreeing that "a finding of ordinary negligence is prerequisite to a finding of gross negligence")

In the present case, Plaintiff cannot establish ordinary negligence because: (1) the economic-loss rule bars this claim, and (2) she waived it by failing to request a charge (or a directed verdict) on the matter before the jury retired to consider Country Title's liability.

## B. Plaintiff's ordinary negligence claim was barred by the economic-loss rule.

Take, first, the economic-loss rule. "Texas courts of appeals have uniformly applied the economic-loss rule to deny recovery of purely economic losses in actions for negligent performance of services." *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 243 (Tex. 2014). This is because "courts prefer, in general, that economic losses be allocated by contract where feasible." *Id.* at 248 (quoting

Restatement (Third) of Torts, Tent. Draft 1 § 5 cmt. A).  In cases involving a "failure to perform a contract," the "parties' economic losses [are] more appropriately addressed through statutory warranty actions or common law breach of contract suits than tort claims."  *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011).

A critical consideration in applying the economic-loss rule is the source of the duty alleged to have been breached.  There can be no tort claim where the economic losses result from a breach of a *contractual* duty: "The economic-loss rule . . . forecloses a negligence claim predicated on a duty created under a contract to which the plaintiff is a party when tort damages are sought for an injury consisting only of economic loss to the subject of the contract."  *Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 835 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Sharyland*, 354 S.W.3d at 417-18).  In other words, "the economic-loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy."  *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).  Where the losses flow

16

entirely from a contract breach, plaintiff is limited to a claim for breach of contract. *Stauffacher v. Coaduum Capital Fund* 1, LLC, 344 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

An escrow agreement is a contract between the escrow agent and the contracting parties; an escrow agent's failure to act in accordance with its terms is a breach of contract. *See EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 867-68 (Tex. App. Dallas [5th Dist.] 2008, no pet.). So the economic-loss rule bars a negligence claim against an escrow agent where, as here: (1) the action is based on the agent's failure to act in accordance with the escrow agreement, and (2) the plaintiff suffered only economic injuries. *First Franklin Fin. Corp. v. United Title Co., Inc.*, 08-CV-01866-PAB-MEH, 2009 WL 3698526, at *5 (D. Colo. Nov. 5, 2009) (economic-loss rule barred negligence and breach-of-fiduciary-duty claims brought against closing agent); *Ju v. Mark*, 1:06CV320 (JCC), 2006 WL 1647266, at *3 (E.D. Va. June 13, 2006) (holding that economic-loss rule barred tort claims against escrow agent, and observing that the complaint "alleges conduct that is more appropriately addressed under contract law."); *Lehman Bros. Holdings,*

17

*Inc. v. Hirota*, 806CV2030T24MSS, 2007 WL 1471690, at \*3 (M.D. Fla. May 21, 2007).

In *First Franklin*, for example, the plaintiff sued a closing agent, claiming that the agent failed to comply with the closing instructions. As in the present case, the plaintiff asserted a negligence claim and breach-of-fiduciary-duty claim alongside its contract claim. The defendant moved for summary judgment on the negligence and breach-of-fiduciary-duty claims, arguing that they were barred by the economic-loss rule. The federal district court agreed. After "examining the nature and source of the alleged duty," the court found that "it is clear that First Franklin's tort claim is not supported by a duty independent of contractual obligations." *Id.* at \*5. Instead, the plaintiff was "simply restating its breach of contract claim." *Id.* at \*5 (internal quotation marks omitted). Accordingly, it found that the claims were "barred by the economic-loss rule." *Id.*

*Ju v. Mark* was much to the same effect. There, too, the defendant was a closing agent. 2006 WL 1647266, at \*3. There, too, the plaintiff alleged a breach of a duty arising out of the parties' agreements concerning the closing of a house refinancing. *Id.* And

18

there, too, the Court held that the economic-loss rule barred the plaintiffs' tort claims. *Id. See also Lehman Bros.*, 2007 WL 1471690 (finding that the plaintiff's tort and breach-of-fiduciary-duty were indistinguishable from its contract claims and so were barred by the economic-loss rule).

In the present case, as in *First Franklin*, *Ju*, and *Lehman Brothers*, the gist of Plaintiff's action is that Country Title failed to honor its obligations under the parties' escrow agreement. Country Title, Plaintiff contends, neither recorded the deeds nor paid off the Allis' mortgagee, World Savings. This is what led Home Savings to institute foreclosure proceedings on the property, to purchase the property at the foreclosure sale free and clear of Plaintiff's ownership interest in the property, and to evict Plaintiff's tenants. And those events, in turn, were what led to Plaintiff's alleged economic injuries (i.e., losing her tenants, defaulting on her loan obligations to EMC, and damaging her credit). Thus, all of Plaintiff's claimed damages can be traced back to Country Title's failure to perform its *contractual* duties

19

under the escrow agreement.[1]  Because the breached duties arose out of the parties' contract—and not any tort duty of care—the economic-loss rule bars Plaintiff's negligence claim.

Without a viable claim for ordinary negligence, however, Plaintiff's claim for gross negligence fails as a matter of law.  And as gross negligence was the sole basis for the jury's award of $100,000 in exemplary damages, the entry of judgment on that verdict must be vacated and the damages reduced by $100,000.

### C.   Plaintiff waived her negligence claim by failing to move for a directed verdict or submit instructions on the issue.

Even if Plaintiff otherwise had a viable negligence claim—and she does not—she waived that claim by failing to request a jury charge on

---

[1] It is true that, in addition to contractual duties, Country Title owed certain fiduciary duties vis-à-vis the buyer and the seller.  *See Gary E. Patterson & Associates, P.C. v. Holub*, 264 S.W.3d 180, 203 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  But those are irrelevant because Plaintiff's injuries did not result from a breach of any of those fiduciary duties.  *See Victory Park Mobile Home Park v. Booher*, 05-12-01057-CV, 2014 WL 1017512, at *4 (Tex. App.—Dallas Feb. 26, 2014, no pet.) (existence of fiduciary duties between partners irrelevant for economic-loss-rule purposes where the breached duty was contractual).  Instead, Plaintiff's damages arose out of Country Title's breach of its contractual obligations under the escrow arrangement.

20

negligence at any time before the jury retired to consider liability issues.

As noted above, Plaintiff's proposed jury charge omitted negligence instructions. Country Title objected to this omission, noting that the jury could not consider gross negligence without first finding ordinary negligence. The Trial Court overruled this objection and submitted the liability issues to the jury without a negligence instruction. The Trial Court reasoned that its prior finding—as a matter of law—that Country Title had breached its fiduciary duty was tantamount to a finding of negligence, thereby obviating the need for the jury to make a finding on negligence.

This was error. To begin with, the trial court erred in finding a breach of fiduciary duty. As noted above, the duties that Plaintiff alleged Country Title breached were purely contractual in nature. This limits Plaintiff to a claim for breach of contract. *Stauffacher*, 344 S.W.3d at 591 (fiduciary duty claim barred by economic-loss rule).

Yet even if there *had* been a breach of fiduciary duty, this still would not have established Country Title's negligence. Texas law carefully distinguishes between negligence and breach of fiduciary duty;

21

the two causes of action are not coextensive. *See Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied) ("Texas courts do not allow plaintiffs to convert what are really negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA.") (collecting cases). Thus, contrary to the Trial Court's reasoning, a breach-of-fiduciary claim cannot serve as a stand-in for a negligence claim to support a gross-negligence finding.

As noted above, the trial court later attempted to fix this missing-negligence-claim problem by "reopening" the negligence issue. But the Trial Court did so only *after* the jury had returned its verdict on liability. That was too late. Where, as here, a case is submitted to a jury without the parties having requested that the jury be charged on an issue, the party waives that issue. *Physicians & Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d 657 (Tex. App.—Corpus Christi 1988, writ denied) (trial court erred in interposing finding on "issue which was never requested by plaintiffs or presented to the jury").

Rule 279 provides that any issues excluded from the jury charge that are "not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P.

22

279. *See also THPD, Inc. v. Cont'l Imports, Inc.*, 260 S.W.3d 593, 607 (Tex. App.—Austin 2008, no pet.) ("[I]f a party seeking relief fails to submit any element of his affirmative claim to the jury, it waives that ground of recovery."). While there is an exception to this rule when the evidence conclusively establishes the necessary elements of a claim, *Bank of Tex. v. VR Electric, Inc.*, 276 S.W.3d 671, 677 (Tex.App.-Houston [1st Dist.] 2008, pet. denied), such is not the case here. At most, the evidence established "conclusively" that Country Title breached its escrow agreement with Plaintiff. But as noted above, the economic-loss rule forbids a contract breach from serving as the basis for a tort claim. There was no other duty of care whose breach the evidence conclusively established. Thus, by failing to request instructions on the issue, Plaintiff waived her claim for negligence

\* \* \*

Because Plaintiff's ordinary negligence claim was both substantively barred (by the economic-loss rule) and procedurally waived (because she failed to request a negligence instruction), and because a finding of gross negligence requires a corresponding finding of ordinary negligence, Plaintiff's claim for gross negligence fails as a

23

matter of law. As the gross negligence claim was the sole basis for the entry of exemplary damages, this Court should reverse with instructions that the Trial Court set aside those damages.

### III. The Trial Court erred in allowing Plaintiff to introduce evidence of settlement negotiations. (Issue #2.)

The Trial Court also erred in allowing Plaintiff to introduce evidence of the efforts of the parties' attorneys to settle the matter. Rule of Evidence 408 bars the use of evidence of settlement discussions to establish the existence or extent of liability:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount.[2]

Tex. R. Evid. 408. Such evidence may be "admitted for another purpose, however, such as proving bias or prejudice or negating a contention of undue delay." *Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 849 (Tex. App.—Austin 2003, no pet.).

---

[2] The wording of the rule has been changed, effective April 1, 2015. The quoted language is from the version in effect at the time of trial.

"The purpose of Rule 408 is to encourage settlement of disputed claims." *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61 (Tex. App.—San Antonio 2005, pet. denied). Settlement negotiations would be chilled if parties knew that the communications could be used against them at trial. For purposes of Rule 408, a settlement offer is a proposal that "create[s] a quid pro quo situation purporting to resolve the dispute in its entirety." *Lerma v. Border Demolition & Envtl., Inc.* ___ S.W.3d ___, 08-12-00105-CV, 2015 WL 737989, at \*3 (Tex. App.—El Paso Feb. 20, 2015, pet. filed).

In the present case, the Trial Court allowed Plaintiff to introduce extensive evidence of communications between Plaintiff's counsel and Country Title's counsel regarding how to resolve the present dispute— including evidence that that Country Title demanded a release and indemnity as part of such a deal. Allowing Plaintiff to present these materials to the jury was an abuse of discretion. At trial, however, Plaintiff argued that the use of this evidence was warranted because it supported her claim of breach of fiduciary duty. She argued that, while attempting to resolve the dispute, Country Title continued to owe Plaintiff a fiduciary duty to act in her best interests. And she claimed

25

that Country Title breached its duty during the negotiations by requesting indemnity and a release.

Not so. An escrow agent is not a general agent. The scope of its agency is narrow, encompassing only those acts necessary to carry out the obligations under the escrow agreement. *Jones v. Blume*, 196 S.W.3d 440, 448 (Tex. App.—Dallas 2006) (" An escrow agent's duties are strictly limited to those set forth in the escrow agreement."). By the time the parties were negotiating over how to resolve the present dispute, however, the time for Country Title to have performed its obligations under the escrow agreement had long since passed. Indeed it no longer was *possible* for Country Title to comply with its obligations under the agreement—the Property was now legally owned by a third party. So any fiduciary duties that Country Title once may have owed to Plaintiff vis-à-vis transferring title to her had long since lapsed.

Nor would it make any sense for Country Title to owe a fiduciary duty to Plaintiff during settlement negotiations. Both sides were represented by counsel. And they both were engaged in arms-length negotiations about how to remedy the situation brought about by Country Title's failure to comply with the terms of the escrow

arrangement. No fiduciary duty exists between parties engaged in arms-length settlement negotiations. *LeBlanc v. Lange*, 365 S.W.3d 70, 84 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that plaintiff's former attorney and business partner did not owe him fiduciary duty where the parties were engaged in arms-length settlement negotiations and both were represented by counsel).

At trial, Plaintiff's counsel argued that Country Title had a fiduciary obligation to buy back the property from World Savings. Again, this is not so. As escrow agent, Country Title's obligations regarding title to the Property were simply: (1) to properly record the deeds, and (2) to forward payment to the appropriate entities. Country Title's failure to do so—coupled with World Savings' actions that rendered belated recording and delivery impossible—transformed Plaintiff's inchoate contractual rights vis-à-vis Country Title into a cause of action for breach of contract. At that point, the issue just became one of damages: how best to repair the problems created by Country Title's breach. Country Title did not owe—and could not owe— Plaintiff a fiduciary duty while negotiating how best to resolve her claim against it.

27

The Trial Court's error in allowing Plaintiff to introduce evidence of settlement negotiations was not harmless. During closing argument, Plaintiff's counsel emphasized the fact that Country Title had requested a full release and indemnity from Plaintiff during negotiations to resolve the present dispute. He insinuated that Country Title's insistence upon such terms demonstrated its indifference to Plaintiff's situation. He sounded this theme repeatedly.

Allowing parties to introduce evidence of these sorts of communications would have a chilling effect on settlements. It is routine for a defendant to request a waiver and indemnity as part of a settlement agreement—indeed, this often is a make-or-break issue. But if such a request could be turned against a defendant at trial, he may opt not to negotiate at all. This is exactly the result that Rule 408 is intended to prevent. Accordingly, the Trial Court erred in allowing Plaintiff to introduce evidence of settlement negotiations.

## IV. The Trial Court erred in entering judgment on the jury's award for credit-reputation damages.

Finally, the trial court erred in entering judgment on the jury's $30,000 award for injury to Plaintiff's credit reputation. Although parties may, in an appropriate case, recover damages for injury to

28

credit, they must present sufficient evidence: (1) to show a loss flowing from the injured credit reputation, and (2) to quantify that loss. *See St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51, 53 (Tex. 1998) (to recover loss-of-credit damages, there must be a showing that it "resulted in injury and proof of the amount of that injury."); *Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 199 (Tex. 1998) (absent proof of injury from loss of credit, damages are only nominal).

In *St. Paul Surplus Lines*, for example, the plaintiff sued its insurer after the insurer had failed to provide the plaintiff with a defense in a claim brought by a third party. In that earlier suit, the plaintiff had suffered a default judgment, which it claimed impaired its credit. As in the present case, however, the plaintiff failed to present any evidence that it was financially harmed by the inability to obtain credit—it just presented evidence that it had a lower credit rating. Despite this absence of evidence, the jury returned a verdict of $500,000 for lost-credit damages, which the Court of Appeals upheld.

On further appeal, however, the Supreme Court of Texas reversed. It held that being unable to obtain a loan is not, by itself, sufficient proof of loss-of-credit damages:

> A plaintiff does not suffer actual damage merely from the inability to obtain a loan. ***There must be a showing that such inability resulted in injury and proof of the amount of that injury.***

*Id.* (emphasis added). Because there was "no evidence that the decline [in the plaintiff's credit rating] injured Dal-Worth in any way," the court reversed the $500,000 award for lost credit reputation.

In addition to being controlling law, the holding in *St. Paul Surplus Lines* makes good sense. After all, a loan rejection can—in some instances—be a blessing in disguise. Suppose, for example, that a party is turned down for a loan to purchase stock. Suppose, further, that immediately thereafter the stock's value plummets. In such a circumstance, the party was helped, not hurt, by his inability to obtain the loan. The impaired credit prevented him from obtaining the very rope with which to hang himself. This example shows why a plaintiff alleging damages resulting from a credit injury must do more than merely show that he was turned down for a loan. He make the further showing of how being turned down for the loan affected him financially.

30

*See Texas Mut. Ins. Co. v. Morris*, 287 S.W.3d 401, 429 (Tex. App.—Houston [14th Dist.] 2009), *rev'd on unrelated grounds*, 383 S.W.3d 146 (Tex. 2012) (reversing damages award for injury to credit reputation because "neither Morris, nor any witness in his behalf, put a dollar amount on the injury he claimed to have sustained because of his inability to obtain the washing-machine loan or to have his name on his home mortgage.").

In the present case, Plaintiff presented no evidence to connect her allegedly impaired credit to any financial loss. It is true that Plaintiff testified that she was denied a $197,000 loan in 2007. But there was no evidence as to why the bank declined the loan. *See Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 482 (Tex. App.—Fort Worth 2004, no pet.) (holding that plaintiff failed to establish credit-injury damages where no evidence that damaged credit rating was reason for the declined loan). Moreover, the denial might have been a blessing in disguise. As in the above example, the house price may have plummeted soon after Plaintiff was turned down for the loan, resulting in an underwater mortgage. Plaintiff, however, failed to present any

31

evidence connecting her loan denial to any financial loss.[3]  So there was no basis for the jury to find that the damage to Plaintiff's credit reputation caused her any financial injury.

The jury, however, awarded Plaintiff $30,000 for impaired credit. It is unclear how the jury came up with this number—neither Plaintiff nor Country Title suggested this as an amount.  More to the point, the $30,000 award is not supported by any evidence of actual loss.  For all the record shows, Plaintiff might have benefitted from her impaired credit, as it may have prevented her from entering into an inadvisable loan for an overpriced investment.  If so, the $30,000 constitutes a windfall.  Plaintiff bore the burden of showing financial injury, yet failed to do so.  Accordingly, the Trial Court erred in entering judgment on the jury's $30,000 award for injury to credit.

---

[3] At trial, Plaintiff's counsel argued that the measure of the loss should be the amount of the loan: $197,000.  (5 RR at 73:16-24.)  This is a non-starter.  The amount of the loan cannot be an appropriate measure of damages because even if Plaintiff had been able to take out the loan, she still would have had to pay it back, with interest.

## PRAYER

For the reasons stated above, Appellant Country Title prays that this Court reverse the Trial Court's judgment, vacate the $100,000 punitive damages award, vacate the $30,000 award for injury to Plaintiff's credit reputation, and order such further relief as it deems appropriate.

Respectfully submitted,

**LeClairRyan**

By: _____/s/ James J. McConn, Jr._____
JAMES J. MCCONN, JR.
Bar No. 13439700
james.mcconn@leclairryan.com
1233 West Loop South, Suite 1000
Houston, Texas 77027
Telephone: 713-654-1111
Facsimile: 713-650-0027
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b),

(d), and (e), I certify that I have served this document on all other

parties, who are listed below, on May 7, 2015.

                                    */s/ James J. McConn, Jr.*
                                    James J. McConn, Jr.

L.T. Butch Bradt
Teltschik-Grubbs PLLC
Bar No. 02841600
14015 Southwest Freeway Suite 4
Sugar Land, Texas 77478

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9, I certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a convention al typeface no smaller than 14-point for text and 12-point for footnotes.  This document also complies with the word-count limitations of Tex. R. App. 9.4(i) because it contains **6,242** words, excluding those parts exempted by Tex. R. App. P. 9.4(i)(1).

*/s/ James J. McConn, Jr.*
James J. McConn, Jr.

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

COUNTRY TITLE, L.L.C.

Appellant,

v.

MORENIKE JAIYEOBA

Appellee.

On Appeal from the 268th Judicial
District of Fort Bend County, Texas
Cause No. 07-DCV-159705

**INDEX OF APPENDIX**

| APPENDIX NUMBER | DESCRIPTION | RECORD CITE |
|---|---|---|
| **1** | Final Judgment | CR 435-37 |
| **2** | Jury Charge (Initial) | CR 415-22 |
| **3** | Jury Charge (Exemplary Damages) | CR 426-28 |

Appendix 1

Filed
8/15/2014 12:54:40 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Rachel Crisler

NO. 07-CV-159705

| MORENIKE JAIYEOBA | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| COUNTRY TITLE, L.L.C. | § | 268TH   JUDICIAL DISTRICT |

## FINAL JUDGMENT

**BE IT REMEMBERED** that the above-entitled and numbered cause came on for trial on July 29, 2014. All parties were present in person and through counsel and announced ready. A panel of 12 duly-qualified citizens was empaneled and seated.

The parties stipulated to breach by Country Title, LLC of its contract with Morenike Jaiyeoba, closing cost damages in the amount of $1,300 that Country Title, L.L.C. was paid by Morenike Jaiyeoba and that she had not been repaid; and Morenike Jaiyeoba's lost profit of $1,500.

At the close of all evidence, the Court directed a verdict for the Plaintiff with respect to Plaintiff's claims of breach of fiduciary duty and negligence against Country Title, L.L.C.

The case was then submitted to the jury.

The Charge of Court submitted on July 30, 2014, reflecting the Court's instructions, the parties stipulations, jury questions and the jury's answers to same, is filed of record in this matter and incorporated herein for all purposes.

The jury's verdict was received on July 30, 2014, and the jury unanimously found for Morenike Jaiyeoba on the gross negligence claim. The Jury also found loss of credit

02929.825 / 1672428.1

ROUTED TO COURT AUG 18 2014 ис
RT'S TO D. CLERK AUG 19 2014 рс

435

reputation damages in the amount of $30,000 associated with Plaintiff's breach of contract or breach of fiduciary duty claims.

The case was then submitted to the Jury on an Additional Charge.

The Additional Charge submitted on July 31, 2014, reflecting the Court's instructions, jury question and the jury's answer to same, is filed of record in this matter and incorporated herein for all purposes.

The unanimous verdict to the Additional Charge was received on July 31, 2014, and the jury discharged.

Based on the foregoing, it is **ORDERED, ADJUDGED AND DECREED** THAT:

1. MORENIKE JAIYEOBA **SHALL HAVE AND RECOVER** against COUNTRY TITLE, L.L.C., for actual damages the sum of $32,800; and

2. MORENIKE JAIYEOBA **SHALL HAVE AND RECOVER** against COUNTRY TITLE, L.L.C., statutory pre-judgment interest in the amount of $13,102.03, calculated at the rate of 5% simple from August 21, 2006, to the date of this judgment; and

3. MORENIKE JAIYEOBA **SHALL HAVE AND RECOVER** against COUNTRY TITLE, L.L.C., for Punitive Damages, the amount of $100,000.00; and

4. This entire judgment, shall bear post-judgment interest at the rate of 5% per annum, compounded annually, from the date of judgment until paid.

436

All costs of court are taxed against COUNTRY TITLE, L.L.C., for which let execution issue if not timely paid. MORENIKE JAIYEOBA may have all such writs and processes as are necessary for collection and enforcement of this judgment if it is not timely paid.

THIS IS A FINAL JUDGMENT THAT DISPOSES OF ALL CLAIMS BETWEEN ALL PARTIES TO THE CASE. ALL RELIEF NOT EXPRESSLY GRANTED IS DENIED. IT IS SO ORDERED.

SIGNED the _19_ day of _August_ 2014.

_____
JUDGE PRESIDING

02929.825 / 1672428.1

437

Appendix 2

07−DCV−159705
CHCO
Charge of the Court
3148368



| MORENIKE JAIYEOBA | IN THE DISTRICT COURT OF |
| v. | FORT BEND COUNTY, TEXAS |
| COUNTRY TITLE, L.L.C. | 268TH JUDICIAL DISTRICT |

**COURT'S CHARGE**

Ladies & Gentlemen of the Jury:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Here are the instructions for answering the questions.

1.    Do not let bias, prejudice, or sympathy play any part in your decision.

2.    Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.    You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.    If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.    All the questions and answers are important. No one should say that any question or answer is not important.

6.    Answer "yes" or "no" to all questions unless you are told otherwise. A "yes"

answer
must be based on a preponderance of the evidence, unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.      Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.      Do not answer questions by drawing straws or by any method of chance.

9.      Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.     Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.     The answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

Presiding Juror:

1.      When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.      The presiding juror has these duties:

a.      have the complete charge read aloud if it will be helpful to your deliberations;

416

b.    preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

c.    give written questions or comments to the bailiff who will give them to the judge;

d.    write down the answers you agree on;

e.    get the signatures for the verdict certificate; and

f.    notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

Instructions for Signing the Verdict Certificate:

1.    Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2.    If 10 jurors agree on every answer, those 10 jurors sign the verdict.

If 11 jurors agree on every answer, those 11 jurors sign the verdict.

If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.    All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 or 11 who agree on every answer will sign the verdict.

4.    There are some special instructions before Questions Two and Three explaining how to answer those questions. Please follow the instructions. If all 12 of you answer those questions, you will need to complete a second verdict certificate for those questions.

Do you understand these instructions? If you do not, please tell me now.

_____
Judge Presiding

**FILED**

JUL 3 0 2014
AT_____4:58___P.M.
*Annie Rebecca Elliott* LG
Clerk District Court, Fort Bend Co., TX

417

## QUESTION NO. ONE

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Morenike Jaiyeoba for her damages, if any, that resulted from Country Title, LLC's breach of contract or from its breach of fiduciary duty.

The parties have stipulated to closing cost damages in the amount of $1,300 that Country Title, LLC was paid by Morenike Jaiyeoba and that she has not been repaid; and the parties have stipulated to Morenike Jaiyeoba's lost profit of $1,500. Do not include those amounts in answering this question.

Otherwise, consider the following elements of damages, if any, and none other.

The damage to credit reputation, if any, suffered by Morenike Jaiyeoba, that was a natural, probable and foreseeable consequence of Country Title, LLC's conduct? You are instructed that any monetary recovery for damage to credit, is subject to federal income taxes. To recover damages for loss of credit reputation, Morenike Jaiyeoba must establish that she sustained an actual injury and the amount of this injury.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

Damage to credit reputation sustained in the past.

Answer: __$30,000.00__

418

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

QUESTION NO. TWO

Do you find by clear and convincing evidence that the harm to Morenike Jaiyeoba resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means—

1. a specific intent by Country Title, LLC to cause substantial injury to Morenike Jaiyeoba, or

2. an act or omission by Country Title, LLC,

    a. which when viewed objectively from the standpoint of Country Title, LLC at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

    b. of which Country Title, LLC has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer: ___No___

419

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

QUESTION NO. THREE

Do you find by clear and convincing evidence that the harm to Morenike Jaiyeoba resulted from gross negligence?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer: __Yes__

420

Verdict Certificate

Check one:

____ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_____
Signature of Presiding Juror

_____
Printed Name of Presiding Juror

✓ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

1.

_____
Signature

Frederick F. Weber
Printed Name

2.

_____
Signature

STEPHANIE WHEATLEY
Printed Name

3.

_____
Signature

YOLANDA DELAHAYA
Printed Name

4.

_____
Signature

Janette Yung
Printed Name

5.

_____
Signature

ROGER CLARK
Printed Name

6.

_____
Signature

NOOR ALI
Printed Name

421

7.

Signature

Printed Name  Steffy Kandathil

8.

Signature

Printed Name  Robert Hammond

9.

Signature

Printed Name  Jose Philip

10.

Signature

Printed Name  Ronald Javier

11.

Signature

Printed Name  Daniel Rosato

If you have answered Question No. Two or Three, then you must sign this certificate also.

Additional Certificate

I certify that the jury was unanimous in answering the following questions. All 12 of us agreed to each of the answers. The presiding juror has signed the certificate for all 12 of us.

Question No. 2 & 3

Signature of Presiding Juror

Frederick T. Weber
Printed Name of Presiding Juror

FILED

JUL 30 2014

AT 1:15 P M

Annie Rebecca Elliott L G
Clerk District Court, Fort Bend Co., TX

422

Appendix 3

No. 07-DCV-159705

| MORENIKE JAIYEOBA | IN THE DISTRICT COURT |
| v. | OF FORT BEND COUNTY, TEXAS |
| COUNTRY TITLE, L.L.C. | 268th JUDICIAL DISTRICT |

## ADDITIONAL CHARGE

MEMBERS OF THE JURY:

In discharging your responsibility on this jury, you will observe all the instructions that have been previously given you.

JUDGE PRESIDING

**FILED**

JUL 3 1 2014
AT _____ 10:30 A M.

Clerk District Court. Fort Bend Co., TX

Page 1 of 3

426

QUESTION NO. FOUR

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against Country Title, LLC and awarded to MORENIKE JAIYEOBA as exemplary damages for the conduct found in response to Question Three?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are—

1.    The nature of the wrong.

2.    The character of the conduct involved.

3.    The degree of culpability of the wrongdoer.

4.    The situation and sensibilities of the parties concerned.

5.    The extent to which such conduct offends a public sense of justice and propriety.

6.    The net worth of Country Title, LLC.

Answer in dollars and cents, if any.

Answer: $ 100,000.00

427

## Certificate

I certify that the jury was unanimous in answering the following questions. All twelve of us agreed to each of the answers. The presiding juror has signed the certificate for all twelve of us.

_____
Signature of Presiding Juror

Frederick F. Weber
Printed Name of Presiding Juror

Page 3 of 3

428