Raymond H. STAUFFACHER,
Jr., Appellant,

v.

COADUM CAPITAL FUND
1, LLC, Appellee.

No. 14–10–00351–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 30, 2011.

Rehearing Overruled July 26, 2011.

Raymond H. Stauffacher, Jr., Dale M. Tingleaf, Houston, for appellant.

James G. Munisteri, Scott David Ellis, Houston, Pat Huddleston, Zachary Lewis, Kennesaw, GA, for appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

JEFFREY V. BROWN, Justice.

This case involves alleged breaches of a joint-venture agreement between appellant Raymond H. Stauffacher, Jr., and Coadum Capital Fund 1, LLC. The jury found Stauffacher breached both the agreement and his fiduciary duty to Coadum, and awarded Coadum damages and attorney's fees. The trial court rendered judgment on the verdict and ordered prejudgment interest and conditional appellate attorney's fees.

On appeal, Stauffacher argues the trial court erred by failing to conclude as a matter of law that Stauffacher was a trustee and not individually liable on the contract he signed with Coadum. Stauffacher argues this position through three separate issues, in which he contends the trial court erred by (1) overruling his objection to the submission of a jury question on whether Stauffacher individually breached the joint-venture agreement; (2) denying his motions to disregard findings and for judgment notwithstanding the verdict; and (3) rendering judgment against Stauffacher individually. Stauffacher also argues the trial court erred by failing to disregard the jury's finding that Stauffacher breached a fiduciary duty owed to Coadum because as a matter of law Stauffacher was not a fiduciary, and because no evidence supported the jury's finding. Stauffacher further contends the trial court erred by failing to disregard the jury's award of damages for breach of fiduciary duty on the grounds that there is no evidence Coadum suffered any injury separate from economic losses recoverable under its breach-of-contract claim. We agree that there is no evidence separate from the economic losses suffered under a breach-of-contract theory to support the $56,025 recovery for breach of fiduciary duty, and modify the trial court's judgment accordingly. We affirm the remainder of the trial court's judgment.

I

This dispute arises out of a joint venture among LOBO International, A.G., Coadum Capital Fund 1, LLC., and Raymond Stauffacher, president of LOBO and allegedly a "trustee" under the joint-venture agreement. In December 2005, one of Stauffacher's associates, George Ober, contacted Coadum to promote an invitation-only investment-trading program suppos-

edly offered only to "sophisticated investors." Under the program, third parties in Switzerland would invest Coadum's funds in non-public trading of "medium-term notes" in the European market. Ober allegedly represented that the program included "guaranteed principal protection" and "above average returns."

Coadum's representatives met with Stauffacher, who allegedly represented he had focused his law practice on the program for the past eight years and that the program would yield tremendous profits without risk. Thomas Repke, vice president of Coadum, testified Stauffacher told him and Coadum president James Jeffrey that the principal invested in the program would not be at risk because it would be placed in an account under Stauffacher's exclusive control, and because stock equivalent to the investment's market value would be secured from a major international bank.

A "joint venture agreement" between the two entities was signed on April 17, 2006. James A. Jeffrey signed the agreement "Individually and as President" of Coadum, and Stauffacher signed as "Trustee & As President" of LOBO. The agreement specifies that the two entities "have agreed to and hereby undertake a joint venture for profit . . . which involves the trading of various financial instruments by professional traders, working with Trade Banks, that trade in the purchase and/or sale of notes, bank guarantees and/or debentures and other similar financial documents, instruments, or assets." Repke testified that LOBO "had to be involved because Mr. Stauffacher was already an accepted client investor, investment representative with the European banks and European trading firms." Accordingly, the agreement calls for Coadum to "make available to LOBO for use as a Joint Venture investment program funds in the orig-inal principal amount of $1,000,000," which would be "invested and transferred by TRUSTEE to the Trading Bank for utilization in the trading program." The agreement provides that the trustee will transfer the funds to the trading bank to be maintained "for the joint venture under the name and sole control" of the trustee, who would also serve as the account's beneficiary. The funds were required to be secured by bank stock having "the same market value as the investment funds." The agreement further provides for regu-. lar payouts to Coadum as the investment bears profit.

On April 25, 2006, Stauffacher sent a document entitled "Letter of Intent/Request for Services" to Pureheart Investments, LTD. In the letter, Stauffacher requested "participation in a private banking opportunity through a private placement of said assets owned free and clear by me." Stauffacher signed the letter "individually and on behalf of himself," although a bank account referred to in the letter is named "Raymond H. Stauffacher, Trustee." Also dated on April 25, 2006 is a "joint venture agreement" between Pureheart and Stauffacher and a "Pay Out Account" signed by Stauffacher. Again, Stauffacher signed both documents "on behalf of himself," although both documents list the same bank account with a "trustee" designation. An "outgoing wire transfer request" from Compass Bank and an "Acknowledged Currency" receipt from UBS reflect the transfer of $1 million from Stauffacher's "trustee" account to Pureheart in early May 2006.

Stauffacher became aware as early as June 2006 that the program was not generating a profit. In an e-mail sent to Dr. C. Dremmel of Pureheart, Stauffacher wrote: "What is happening is not clear, but it is certain that this is not even *nearly* performing as represented. . . . The failure

of these two ventures will result in substantial loss of profits to everyone involved.... [W]hoever is in control of these ventures is about to really screw them up and lose both of them...."

Repke testified Stauffacher never told him or Jeffrey that Coadum's funds had been invested with Pureheart. Rather, Repke testified that by May 2006, he and his partner "started to wonder when stock was going to be transferred" and were "really in the dark as to what was going on, if anything." Repke testified that Stauffacher told him and Jeffrey that "[t]hese things don't get set up overnight" and attributed delays to a "bureaucratic chain." By early June 2006, Stauffacher told Repke "we were down to one last signature requirement, and there was one person holding it up, and they expected his signature at any moment, and the stock would be issued and the trading line would be effected." Repke testified Stauffacher never told him the funds were already invested and not performing as intended, instead leading Repke and Jeffrey to believe that issuance of the stock was imminent. In an email dated June 9, 2006, Ober wrote to Repke and Jeffrey, "Be assured, the funds have not been misused or misplaced." Repke testified Ober and Stauffacher orally repeated that assurance.

In late June or early July, Repke and Jeffrey demanded a return of Coadum's principal, and Stauffacher promised to return it by July 17. When Stauffacher failed to return the funds by then, he promised a report by August 4 outlining when and where the funds would be returned. Repke testified Stauffacher was "extremely vague with me on where the money was and how he was getting it back." Evidence showed that $585,000 of Coadum's principal was returned to Stauffacher in October 2006, but Repke testified Stauffacher never mentioned the returned funds. After Coadum filed suit against Stauffacher, Stauffacher returned $585,000 to Coadum.

The jury found that Stauffacher failed to comply with the joint-venture agreement and awarded breach-of-contract damages of $415,000. The jury was asked separately if Stauffacher failed to comply with his fiduciary duty to Coadum. The jury answered that Stauffacher had breached his fiduciary duty and awarded Coadum $56,025 in damages for the breach.

## II

The essence of Stauffacher's first, second, and fourth issues is that the trial court erred in concluding he was not acting at all times as a trustee, and therefore could not be held individually liable. In his first issue, he contends the trial court erred by submitting Question 1–a, asking if Stauffacher failed to comply with the joint-venture agreement. In his second issue, he argues the trial court erred by denying his motions to disregard findings and for judgment notwithstanding the verdict, both of which were based on the jury finding that Stauffacher individually breached the agreement. And in his fourth issue, Stauffacher maintains the court erred in entering judgment against Stauffacher individually because at all times Stauffacher acted in the capacity of trustee.

The parties agree that "a plaintiff may sue a 'trustee individually if the trustee made the contract and the contract does not exclude the trustee's personal liability.'" *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 267 (Tex.App.-Houston [14th Dist.] 1995, no writ) (quoting Tex. Prop.Code § 114.084(a)). Stauffacher further argues that the addition of "as trustee" after his signature is *prima facie* evidence of an intent to exclude the trustee from personal liability; indeed, section

114.084(b) of the Property Code says as much. Nevertheless, as Coadum correctly points out, section 114.084 governs only third-party claims, and there is no third-party claim in this case. Although Coadum's position is that the joint-venture agreement did not create a trust, it points out that a trustee's liability to a beneficiary is set out in section 114.001 of the Property Code, which does not include a provision that signing a document "as trustee" is *prima facie* evidence of an intent to exclude personal liability.

■ We agree that section 114.084 does not control claims such as this one. If Stauffacher were correct that the joint-venture agreement created a trust, the dispute in this case would involve Stauffacher as trustee and Coadum as settlor and beneficiary. Stauffacher's liability to Coadum as trustee, if any, would exist in the framework of section 114.001 of the Property Code.

■ A trust is created only if the settlor manifests an intention to create a trust. Tex. Prop.Code § 112.001. With the settlor's intent as the touchstone of a proper analysis, there are five statutory methods for creating a trust:

(1) a property owner's declaration that the owner holds the property as trustee for another person;

(2) a property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person;

(3) a property owner's testamentary transfer to another person as trustee for a third person;

(4) an appointment under a power of appointment to another person as trustee for the donee of the power or for a third person; or

(5) a promise to another person whose rights under the promise are to be held in trust for a third person.

Tex. Prop.Code § 112.001; *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 249 (Tex. 1984). A court has no authority to impose a trust unless the prerequisites of a trust are satisfied. *Jones v. Blume*, 196 S.W.3d 440, 448 (Tex.App.-Dallas 2006, pet. denied). Similarly, a court cannot impose a trust when the parties contemplated another relationship. *See Spiritas v. Robinowitz*, 544 S.W.2d 710, 715 (Tex.Civ.App.-Dallas 1976, writ ref'd n.r.e.).

■ Simply signing a contract "as trustee" does not itself create a trust. *Nolana Dev. Ass'n*, 682 S.W.2d at 249; *Anzilotti*, 899 S.W.2d at 268. A party seeking to escape personal liability under a contract by pleading he acted as a trustee bears the burden of showing he was in fact a trustee and not simply trying to evade liability by signing the contract "as trustee." *Nolana Dev. Ass'n*, 682 S.W.2d at 249; *Anzilotti*, 899 S.W.2d at 267–68.

In *Spiritas*, the parties formed a joint venture to purchase a tract of land. 544 S.W.2d at 713. Robinowitz contributed his right under a contract of sale to purchase the land, while Spiritas paid costs on closing the sale. *Id.* The parties signed their agreement as "Spiritas, Trustee," and "Robinowitz, Trustee," and the agreement also specified that title to the land would be taken in the name of "Robinowitz, Trustee." *Id.* Robinowitz would later attain a personal loan and use the land as collateral, thereby placing a second lien on the property. *Id.* at 714. When a bank eventually foreclosed on the lien, Spiritas argued Robinowitz had no right to encumber the property.

The bank argued that the Blind Trust Act protected its second lien on the property, but the court found the act inapplicable because a trust was never created. *Id.*

at 715. The court concluded, however, that mere "[d]esignation of a party as 'trustee' does not in itself create a trust," and that use of "trustee" in the deed was merely descriptive and without legal effect. *Id.* (citing *Costello v. Hillcrest State Bank,* 380 S.W.2d 780, 782 (Tex.Civ.App.-Dallas 1964, no writ)). Significantly, the court concluded that "the requirement that Robinowitz take title as trustee does not show, with certainty, an intent that the venture property be held in trust for the venture as distinguished from the common situation in which one partner holds title for the benefit of the partnership." *Id.*

A similar case faced the Texas Supreme Court in *Nolana Development Association v. Corsi,* in which Nolana, a joint venture, sued the titleholder of property owned by the venture, alleging that her failure to pay part of the mortgage resulted in foreclosure and loss of the property. 682 S.W.2d at 248. Corsi had taken title to the joint venture's property as trustee "for the mutual convenience of the parties." *Id.* Nolana argued Corsi breached her fiduciary relationship as trustee of the property, but the court held Nolana had failed to create a trust under any of the statutory provisions, noting that "the mere designation of a party as 'trustee' does not create a trust." *Id.* at 248–49.

Here, Stauffacher had individual responsibilities under the joint-venture agreement related to the logistics of facilitating the transfer of money to the investment program. These responsibilities included taking title to the funds invested by Coadum in order to transfer the money to the investment program that would benefit Coadum and LOBO, a company of which he was president. Assigning these responsibilities to a "trustee" does not, however, indicate intent to create a formal trust under section 112.001 of the Property Code. Rather, the provisions of the joint-

venture agreement more closely reflect the facts in *Spiritas* and *Nolana,* in which courts concluded that placing title to partnership assets for the logistical convenience of carrying out partnership business did not create a formal trust.

■ The document Stauffacher argues created a trust is titled "Joint Venture Agreement." The first sentence of the document describes the parties to the agreement as "joint venturers" who "have agreed to and hereby undertake a joint venture for profit," which is to be achieved from an "asset investment program arranged by LOBO." The joint-venture agreement does not describe the structure or existence of a trust, nor does it name a settlor or beneficiary. The responsibilities of the "trustee" are referred to several times in the agreement, and Stauffacher argues that he was the "trustee to facilitate the investment program." But the mere use of the term "trustee" does not necessarily create a trust, and it did not do so here.

Furthermore, Stauffacher's actions following execution of the joint-venture agreement show a lack of intent to create a trust. Stauffacher signed a letter of intent with Pureheart in his individual capacity requesting "participation in a private banking opportunity through a private placement of said assets owned free and clear by me." The signature line reads: "Signature of Individual on Behalf of Himself." Stauffacher then signed a "Pay Out Account," which authorized the creation of an account into which the trade funds would be deposited. The "Pay Out Account" documentation includes the following language: "I, Raymond H. Stauffacher, Jr., authorized signatory on behalf of myself, designate the following account to receive the trade funds derived." Stauffacher signed the document in his individual capacity. He then entered into a joint-

venture agreement with Pureheart to manage investment of the funds. Stauffacher signed the joint-venture agreement "on behalf of himself," and the agreement reads: "Raymond H. Stauffacher, Jr., as represented by private placement signatory for himself, agrees...."

We conclude as a matter of law that none of the parties to the joint-venture agreement intended to create a trust. As a trust did not exist, there was sufficient evidence to submit a question to the jury as to Stauffacher's individual liability under the contract, and there was sufficient evidence to enter a judgment on the jury's finding that Stauffacher failed to comply with the joint-venture agreement. Accordingly, the trial court did not abuse its discretion by denying Stauffacher's motions for a new trial and judgment notwithstanding the verdict. We overrule Stauffacher's issues one, two, and four.

## III

In his fifth issue, Stauffacher argues the trial court erred in failing to disregard the jury's answer to Question 2–b because there is no evidence or, alternatively, insufficient evidence to support a finding of damages for breach of fiduciary duty. We agree.

In Question 2–a, the jury found Stauffacher breached his fiduciary duty to Coadum, and in Question 2–b awarded $56,025 in damages based on its finding in Question 2–a. It is not clear from the record, and at oral argument counsel was unable to speculate, what formed the basis for the amount the jury awarded. During closing argument at trial, Coadum's counsel asked the jury to award $1,015,000 in damages for Stauffacher's breach of the joint-venture agreement. In justifying that amount, counsel argued the following:

> $415,000 was not returned. And Mr. Repke testified that on the very, very

minimum amount, if he had taken the money and actually invested it in less profitable programs, he would have yielded $600,000. And so that amount that we ask that you put into the answer for—for 1(c) is $1,015,000 even.

Notably, as a preface to his suggestion of a damages amount for Question 1–c, counsel stated: "And these will be the same damages for each of the questions." Subsequently, counsel argued the following in support of his request that the jury answer "Yes" to Question 2–a, the breach-of-fiduciary-duty question:

> Confronted with the deposition, [Stauffacher] ultimately testified that he discussed with Tom Repke that the planned security was, no trading would happen until the bank issued stock in UBS's name to Coadum. The stock was never issued. Never issued. But the trading started, which is why the money is lost.

> Now the reason it was—the reason it was able to be traded was because it was not set up in the sole control of the trustee. So the trader started trading. And even worse, they were trading foreign currencies which, under the definition of this agreement, was not even included in the type of investments that were to be used. It's almost as if at every stage, these gentlemen got it wrong.

> . . .

> I think one of the most unbelievable parts of the testimony in this case was that when the trustee, Ray Stauffacher, knew that there was a problem, he didn't tell Coadum. Didn't want to bother them, didn't want to irritate them. Wanted to wait until he had good news.

> . . .

When he got the money back, he didn't want to bother them with that either. I mean, that's unbelievable. He has a duty to disclose everything.

The next question is 2(b), which is the damages, *and it's the same amount, $1,015,000.*

(emphasis added). Counsel essentially argued Stauffacher should pay damages for breach of his fiduciary duty because he (1) failed to secure Coadum's funds in an account only he could access; (2) failed to secure the principal with bank-issued stock prior to use of the principal for trading; (3) failed to report subsequent losses when trading began; and (4) failed to inform Coadum that part of its principal had been returned. In its appellate brief, Coadum similarly argues that the separate bases for breach-of-fiduciary-duty damages are that Stauffacher (1) falsely represented to Coadum that the investment program would pay Coadum in the near future despite having just theorized in an e-mail that everyone involved might suffer substantial losses; (2) falsely represented to Coadum that it could rely on program managers even after he had lost confidence in them; and (3) failed to inform Coadum that the principal investment sum had been returned to him after Coadum demanded it.

What Coadum has failed to articulate, both at trial and on appeal, is to what damages Coadum is entitled separate from the economic damages awarded for breaching the joint-venture agreement. Coadum certainly put on evidence that Stauffacher breached a fiduciary duty, if indeed one existed. But Coadum put on no evidence to show how it was damaged specifically by Stauffacher's breach of fiduciary duty separate from his failure to comply with the joint-venture agreement.

■ Counsel's request that the jury award "the same amount" for both the breach-of-contract and breach-of-fiduciary-duty damages questions belies the reality that the two questions were alternative theories of the same case. A party is generally entitled to present alternative theories, but is not entitled to a double recovery. Indeed, had the jury complied with counsel's request and awarded $1,015,000 under both questions, Coadum would have been required to elect its remedy to avoid violating the one-satisfaction rule. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991) (acknowledging the one-satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury).

■ Stauffacher argues the damages for breach of fiduciary duty violate the economic-loss rule. The economic-loss rule generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract. *Lamar Homes, Inc. v. Mid–Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex.2007). When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract. *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991). Whether couched as a violation of the economic-loss rule or simply as a lack of evidence to support the submission of a jury question, the result is the same—Coadum put on no evidence of damages independent of those suffered as a result of Stauffacher's breach of the joint-venture agreement. Accordingly, there was no evidence upon which the jury could base an award, and the trial court erred in failing to disregard the jury's answer to Question 2–b. We sustain Stauffacher's fifth issue.

IV

Stauffacher's third issue is that the trial court erred in failing to disregard the jury's answer to Question 2–a, concerning

whether Stauffacher failed to comply with his fiduciary duty to Coadum. We do not reach this issue; even if Stauffacher owed and breached a fiduciary duty to Coadum, we have already determined in Stauffacher's fifth issue that there were no damages for breach of fiduciary duty separate from the economic losses Coadum suffered under a breach-of-contract theory. We therefore do not reach Stauffacher's third issue.

\* \* \*

For the foregoing reasons, we conclude as a matter of law that the joint-venture agreement between Stauffacher and Coadum did not create a trust and overrule issues one, two, and four. We further conclude there is legally insufficient evidence to support the award of damages for breach of fiduciary duty and sustain issue five. Accordingly, we modify the trial court's judgment to delete the award of damages and prejudgment interest for breach of fiduciary duty. We affirm the remainder of the judgment.