**REVERSE and Remand and Opinion Filed April 1, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01479-CV

**DIXIE CARPET INSTALLATIONS, INC., Appellant**
**V.**
**RESIDENCES AT RIVERDALE, LP AND RESIDENCES AT RIVERDALE GP, LLC, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-04903-2012**

## OPINION

Before Justices Bridges, Whitehill, and Nowell
Opinion by Justice Whitehill

Among other questions, we address whether an agent's authority to extend an offer on the principal's behalf concerns an element of a contract breach claim—and not an independent ground of recovery—such that a Rule of Civil Procedure 279 deemed agency finding is proper if (i) supported by the evidence, (ii) there was no objection that the charge omitted an agency submission and none was requested, and (iii) no party asked the trial court to make a finding on that issue.

On remand from this court, the trial court entered judgement for Dixie Carpet Installations, Inc. on its contract claim. But the court later granted a judgment

notwithstanding the verdict for Residences at Riverdale L.P. (Residences LP) and Residences of Riverdale, GP, LLC (Residences LLC) and entered a take-nothing judgment against Dixie. We refer to Residences L.P. and Residences LLC as "Riverdale" unless a distinction is warranted.

We conclude that (i) Dixie is entitled to recover on its contract claim because there is legally sufficient evidence supporting the jury finding that Riverdale agreed to and breached its contract with Dixie; (ii) Dixie may not recover attorney's fees regarding that claim because Civil Practice and Remedies Code § 38.001 does not apply to a limited partnership or a limited liability company; and (iii) *Dixie I* is not entitled to a conversion or quantum meruit recovery because its claim against Riverdale sounds in contract.

Accordingly, we (i) reverse the trial court's take-nothing judgment against Dixie; (ii) render judgment for Dixie and against Residences LP and Residences LLC, jointly and severally, for $114,318.40 plus pre and post judgment interest as allowed by law; and (iii) remand the case to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

This is the second appeal in this case. Detailed facts may be found in our prior opinion, and we recite only the background necessary to resolve this appeal.

Riverdale contracted with Nations Construction Management, Inc. to build an apartment complex. Nations subcontracted Dixie to provide the project's carpet and flooring.

Dixie performed as required, but several of its invoices went unpaid. In fact, Nations did not timely pay many of its subcontractors. So Riverdale began cutting joint checks with Nations to pay the subcontractors. Ultimately, however, there was not enough money to pay all subcontractors.

David Stapleton, a Riverdale principal, told John Czapski, Nations' president, to ask the subcontractors to accept a 20% claim reduction and release their liens in exchange for Riverdale's prompt payment. Czapski complied. Dixie and the other affected subs agreed to Riverdale's proposal.

Riverdale set up and signed the escrow agreement providing for the reduced subcontractor payments. Exhibit B to the escrow agreement listed the subcontractors—including Dixie—that were to receive their discounted payments and their corresponding amounts. Riverdale initially funded the escrow account with sufficient funds to pay all designated payees their respective sums. Riverdale also caused the escrow agent to create a check to pay Dixie its promised sums.

But after Dixie delivered its lien release, a different subcontractor reneged on its agreement, filed a lien against the property, and sued.

Consequently, Riverdale directed the escrow agent to void Dixie's check, which it did. Although the lien-filing subcontractor's claim was paid in full, Dixie got nothing more.

Dixie sued Riverdale for contract breach, fraud, conspiracy, and quantum meruit and Nations for contract breach, a sworn account, quantum meruit, and conspiracy. A jury found for Dixie on its contract, conversion, fraud, and quantum meruit claims against Riverdale and on its contract claims against Nations.

Dixie elected to recover on its fraud claim against Riverdale, and the trial court entered judgment for Dixie for $142,898 for actual damages and $285,796 for exemplary damages.[1] Riverdale appealed.

We reversed that judgment, rendered a take-nothing judgment against Dixie on its fraud claims, and remanded the case for Dixie to elect a new remedy. *Residences at Riverdale, LP v. Dixie Carpet Installations, Inc.*, No. 05-15-01030-CV, 2017 WL 2889276, at *1 (Tex. App.—Dallas July 7, 2017, no pet.) (*Dixie I*).

On remand, the trial court denied Dixie's motion for judgment on its conversion claim. Dixie then moved for judgment on its conversion claim or, alternatively, on breach of contract or quantum meruit. The trial court initially entered judgment for Dixie on its contract claim and for attorney's fees. But

---

[1] The court also rendered judgment against Nations for $142,898 in breach of contract damages and $234,817 in attorney's fees. Nations, however, is not a party to any of the appeals.

Riverdale then moved to modify that judgment and for JNOV. The court granted that motion and on December 13, 2018 rendered judgment that Dixie take-nothing from Riverdale.[2] Dixie appeals from that judgment.

## II. DISCUSSION

### A. First Issue: Did the trial court err by granting the JNOV and vacating the contract breach and attorney's fees judgment for Dixie?

Yes. Czapski's authority to communicate Riverdale's offer was a component of Dixie's contract claim's valid contract element; and there was legally sufficient evidence establishing that Riverdale (i) agreed to pay Dixie 80% of Dixie's unpaid invoices in exchange for Dixie releasing its liens and (ii) breached that contract by directing the escrow agent to void Dixie's check for the reduced sum due.

#### 1. Standard of Review

A trial court may disregard a jury's verdict and render a JNOV if no evidence supports one or more of the jury's findings or if a directed verdict would have been proper. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003).

We review JNOV's for legal sufficiency of the evidence supporting the verdict. *Id.* In such review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Cent.*

---

[2] That same judgment also provides that Dixie shall recover contract breach damages and attorney's fees from Nations.

*Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007). We uphold the jury's finding if more than a scintilla of competent evidence supports it. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Any ultimate fact may be proved by circumstantial evidence. *Hoffmann v. Dandurand*, 143 S.W.3d 555, 559 (Tex. App.—Dallas 2004, no pet.) (ultimate fact is one that is essential to cause of action and would have direct effect on judgment); *see also Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). An ultimate fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995) (per curiam). However, to withstand a legal sufficiency challenge, circumstantial evidence still must consist of more than a scintilla. *Id.*

The existence of an oral contract may be proved by circumstantial or direct evidence. *See Heminik Farms, Ltd. V. BLC Const., LLC.*, No. 07-17-00457-CV, 2019 WL 1287881, at *6 (Tex. App.—Amarillo Mar. 20, 2019, pet. denied) (mem. op.). Courts consider the communications between the parties and the facts and circumstances surrounding those communications when determining the existence of an oral contract. *Id*.

## 2.    Contract Breach

### a.    The Contract Formation Issue

The jury found that Riverdale and Dixie entered into a contract whereby Riverdale itself would escrow and pay Dixie $114,318.40 (out of the $142,898 Nations owed Dixie):

> **QUESTION 1**
>
> Did *Dixie Carpet Installations, Inc.* and *Residences at Riverdale, LP* agree, in or around November, 2010, that if *Dixie* would agree to reduce the amount of its claim from $142,898.00 to $114,318.40, that *Riverdale* would pay *Dixie* the reduced amount of $114,318.40 with funds to be placed in escrow?
>
> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions. An oral agreement may be enforceable as a contract just as may a written agreement.
>
> Answer "Yes" or "No."
>
> Answer: __YES__

Dixie argues that the trial court erred by entering judgment notwithstanding this finding.  We agree.

To prove a breach of contract claim, a plaintiff must establish the existence of a valid contract, performance or tendered performance by the plaintiff, the defendant breached that contract, and damages resulting from the breach.  *Tin Star Dev., LLC v. 360 Residential, LLC,* No. 05-17-00040-CV, 2018 WL 1804891, at *3 (Tex. App.—Dallas Apr. 17, 2018, no pet.) (mem. op.).

Parties form a binding contract when there is: (i) an offer, (ii) an acceptance in strict compliance with the offer's terms, (iii) a meeting of the minds, (iv) each

–7–

party's consent to the terms, and (v) execution and delivery of the contract with the intent that it be mutual and binding. *Healey v. Romero*, No. 05-16-00598-CV, 2018 WL 2126903, at *2 (Tex. App.—Dallas May 7, 2018, no pet. h.) (mem. op.).

The only contract breach element at issue here is Riverdale's JNOV motion argument that there was no evidence supporting the alleged contract between Dixie and Residences LP as the jury found unless Nation's president, Czapski, was Riverdale's agent when he communicated Riverdale's offer.

In that vein, Riverdale asserted that Dixie failed to (i) plead and prove that Czapski was Riverdale's agent and (ii) request a jury question or obtain a finding that Czapski was Riverdale's agent. To that end, Riverdale urged that there was no evidence that Czapski had the express or apparent authority to negotiate the contract with Dixie and Dixie could not establish that Czapski was Riverdale's agent through Czapski, because there was no evidence (other than Czapski's testimony) that Riverdale knowingly permitted him to hold himself out as having authority to contract on Riverdale's behalf.

Dixie responded that Riverdale waived the agency issue by not raising the issue in its pleadings and not objecting to agency being absent in the charge. Furthermore, Dixie argued that (i) agency is not an independent ground of recovery but is subsumed in the contract formation element and (ii) a Rule 279 deemed finding is supported by the evidence and the charge as requested and submitted.

We agree with Dixie.

### b. Dixie's Evidentiary Review

On appeal, Dixie argues that we previously concluded that there was sufficient evidence to find that Riverdale breached the contract, but for purposes of fraud, there was no evidence that the breach was intended at the time the contract was made. Dixie is partially correct.

Because the judgment reviewed in *Dixie I* was based solely on a fraud theory, we did not review the sufficiency of the contract formation evidence. That is, although *Dixie I* has several instances expressing the alleged contract's existence, we made those statements while analyzing whether there was legally sufficient evidence supporting fraudulent scienter, not whether the evidence supported the contract's existence as such. Thus, in that context, we concluded that, "although Dixie's evidence may establish Riverdale's breach of contract, breach alone is no evidence that breach was intended when the contract was originally made." *Residences at Riverdale,* 2017 WL 2889276, at *6.

Because whether there is legally sufficient evidence supporting the alleged contract's existence is now before us, we proceed to conduct that review.

### c. Contract Formation and Breach Evidentiary Review

### 1. Introduction

Riverdale continues to argue that it has no contractual liability because Dixie did not plead, prove, or obtain a jury finding that Czapski (a Nations employee) acted as Riverdale's agent when he communicated Riverdale's offer to Dixie and the other

affected subs.[3]  Although Dixie did not plead the word agency, that fact does not resolve the matter in this case because (i) agency is an element of contract formation, not an independent recovery ground; (ii) Dixie put contract formation at issue, (iii) Riverdale did not plead lack of authority or specially except to Dixie's pleadings; (iv) Riverdale did not object to the charge for lack of an agency submission or request a finding on the issue; and (v) the evidence supports a finding that Riverdale authorized and approved the contract at issue.

## 2.    The Pleadings

To begin, agency in this context is a component of the offer and acceptance elements of Dixie's contract breach claim instead of being an independent ground of recovery.  *See Frerking v. Southern Cty. Mut. Ins. Co.*, 467 S.W.2d 672, 673-74 (Tex. Civ. App.—Amarillo 1971, writ dismissed) (agency is a component element of estoppel theory, not an independent recovery ground).[4]

---

[3] Generally, Texas courts do not presume that an agency relationship exists.  *Community. Health Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017).  Rather, if the existence of an agency relationship or the extent of the authority conferred is at issue, the party making the allegation has the burden of proving it by a preponderance of the evidence.  *Id.*

[4] More specifically, according to *Frerking*:

> The trial court is required to submit to the jury any group of facts which, if true, would constitute a ground of recovery if plead and supported by the evidence.  Rule 277.  In this case recovery on the theory of estoppel consisted of several component parts of which agency is one.  The issue of agency is not within itself an independent ground of recovery but is a vital element of plaintiff's right of recovery.  The court submitted some elements of the ground of recovery but omitted the one vital element of agency, and there was no objection to the failure to submit the same.  The parties are considered on appeal to have agreed to waive a jury trial on the unsubmitted element and to have submitted it to the court for determination. Before judgment was entered, either party could have requested the court to make a finding on the agency issue, and the court could have found as the evidence justified.  However, there being no request or express finding, the agency

We agree with our sister court: Dixie's pleading that it, Nations, and Riverdale all agreed to the cash for lien release deal was sufficient to put Riverdale on notice that as a component of Dixie's contract existence element Czapski's authority to extend the offer and acceptance was an issue for trial.

Specifically, Dixie's petition alleged that (i) Riverdale representatives and Czapski "agreed that Nations must contact the unpaid claimants and negotiate a discounted amount to be paid to each" and (ii) Dixie, Nations, and Riverdale agreed that Dixie would reduce the amount of its claim to $114,318.40 and execute a final lien release in favor of Riverdale in exchange for which Riverdale agreed to pay Dixie. Thus, we conclude that Dixie's pleadings put Czapski's authority as Riverdale's agent at issue as part of Dixie's contract formation element.

### 3. The Charge and Dixie's Deemed Finding

As we showed in part II(A)(2)(a) above, Question 1 asked the jury whether Dixie and Riverdale agreed that Riverdale would pay Dixie with the escrowed money if Dixie reduced its claim.

Immediately below that question, the charge explained that in answering that question the jury could consider (i) what the parties said and did in light of the

---

element is not waived. *Wichita Falls & O.R. Co. v. Pepper*, 134 Tex. 360, 135 S.W.2d 79 (1940); TEX. R. CIV. P. 279. Since the submitted issue of agency was not waived, the court was not authorized to render judgment non obstante veredicto on the first ground of defendant's motion.

467 S.W.2d at 673-74.

surrounding circumstances, (ii) they could not consider unexpressed thoughts or intentions, and (iii) an oral agreement may be enforceable as a contract.

Furthermore, earlier in the charge, the trial court instructed the jury regarding the existence of a valid contract that:

#### Existence of Contract

You are instructed that in order for the parties to make an enforceable contract, there must be an **offer** and **acceptance** and **consideration**, and there must be a **meeting of the minds** on all essential terms of the agreement and a communication showing that each party has consented to the terms of the agreement.

**Consideration** is a bargain to exchange the giving of a benefit or enduring of a detriment in return for receiving a promise.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances. You may not consider the parties' unexpressed thoughts or intentions.

Neither Dixie nor Riverdale objected to Question 1 or the related instructions. And neither party requested an agency question or agency instructions. Indeed, both parties acknowledged their consent to the questions and instructions as given. Accordingly, Riverdale cannot complain about an allegedly missing agency question or agency instructions. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 228 n. 17 (Tex. 2019) (*citing Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014) (parties agreed to charge as submitted).

Two additional principles inform our analysis:

First, we measure the sufficiency of the evidence supporting an unobjected to question and instructions according to the charge's language. *Seger v. Yorkshire Insur. Co. Ltd.*, 503 S.W.3d 388, 407 (Tex. 2016). Applying this principle, we review the record to determine whether there is sufficient evidence of contract formation based on the charge as written and conclude that there is.

Second, Rule 279 provides for a deemed finding on missing elements where, as here, (i) at least one element of a cause of action is submitted and found, (ii) there is no objection to an omitted element, (iii) neither party requested that the element be included in the charge, and (iv) neither party asked the trial court to make written findings on the omitted element. TEX. R. CIV. P. 279. Here Question 1 submitted some elements of Dixie's contract breach cause of action and neither party objected to the question, requested an agency instruction, or asked the trial court to make a written finding regarding Czapski's authority to act for Riverdale. Thus, we review the record to determine whether there is legally sufficient evidence to support a deemed finding that Czapski had the express or apparent authority to negotiate the Dixie agreement on Riverdale's behalf and conclude that there is.

### 4. Evidence Supporting the Answer to Question 1

To begin, the record shows that before the subject agreement came into being, Nations and Riverdale worked together to identify subcontractors that needed to be paid and jointly cut checks to effect such payments.

And Czapski (with Nations) testified that Stapleton (with Riverdale) told him to try to get the subcontractors to accept a 20% reduction of their claims in exchange for prompt payment. Thus, Czapski contacted Dixie about accepting Riverdale $114,318.40 offer, and Dixie accepted. Residences LP does not deny instructing Czapski to make the offer to Dixie.

Consistent with Czapski's testimony, the written escrow agreement between Riverdale, Riverdale's bank, and the escrow agent was admitted into evidence. That agreement recited that Riverdale's project had sixty-eight unpaid subs that agreed to waive or release their liens in exchange for payment from funds that Riverdale and its bank were placing in the escrow account. Among other things, the agreement required the escrow agent to immediately pay without further instruction the unpaid subs listed on the related Exhibit B the corresponding amounts shown on that exhibit (once the sub provided a lien and release). The Exhibit B specified that Dixie was to receive $114,318.40 out to the $142,898.00 it was owed.

The escrow agreement and its Exhibit B are legally sufficient evidence from which the jury could reasonably have found that (i) Riverdale would not have signed that agreement had it not authorized its terms and (ii) Riverdale authorized and approved its offer (that Czapski undisputedly communicated) to pay Dixie 80% of the amount Nations owed Dixie if Dixie released its lien claims.

Furthermore, Howard Akin, a Riverdale limited partner, testified regarding an email to himself predating the escrow agreement where he memorialized a

conversation he had with Czapski and others regarding the project. Akin noted that the group discussed Riverdale's need to close out the job and its plan to offer discounted payments for quick payments:

I then moved to get them focused on trying to close out the job and offered to set up the schedule so they could track what discounts they were going to offer each sub for quick payment. They asked if the bank would fund. I told them if ...ey got agreement from all subs then the bank would fund within about two weeks of having it done. I stayed late on .Iday and emailed them the template showing a 20% discount for most subs and a substantial discount on those with issues. We also discussed they needed to get the legal work done to get us off any suits which John said they were in the process of doing.

Akin also confirmed that Riverdale needed the subcontractors to accept discounted amounts and provide lien releases to satisfy its lender. Akin set up the schedule to track the discounts and emailed Nations the template for the twenty percent discount.

Additionally, Stapleton (with Riverdale) did not dispute that joint checks were issued from Nations and Riverdale before the escrow agreement or that Dixie agreed to take twenty percent less than what it was owed so that it could get paid. Stapleton also did not dispute that Dixie was owed the $114,318.40 it agreed to accept in exchange for the released lien. Stapleton signed the escrow agreement on Riverdale's behalf.

Moreover, once the funds were escrowed, Nations exercised no control; only Riverdale, Chicago Title, and Legacy Bank controlled the funds. There is no dispute that Riverdale told Chicago Title to void the check to Dixie from the escrowed funds.

In sum, there was evidence of the project's financial problems, Riverdale's awareness and tracking of the unpaid subs and their outstanding balances, Riverdale's discussions with Czapski regarding his communicating regarding

–15–

Riverdale's willingness to promptly pay 80% of the subs' unpaid sums due in exchange for lien releases. Finally, in light of the above, Riverdale signed the escrow agreement implementing the agreement with Dixie. This evidence was more than legally sufficient direct and circumstantial evidence supporting the jury's "Yes" answer responding to Question 1.

### 5. Czapski's Express or Apparent Authority

Additionally, an agent may have actual or apparent authority. *See United Residential Prop., L.P. v. Theis,* 378 S.W.3d 552, 564 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Actual authority is that authority a principal intentionally confers upon an agent, intentionally allows the agent to believe he possesses, or allows the agent to believe he possesses by want of due care. *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.—Houston [1st Dist.] 1994, no writ).

Apparent authority arises "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Gaines v. Kelly*, 235 S.W.3d 179,183 (Tex. 2007).

Apparent authority is based on estoppel and requires Dixie to show that (i) it reasonably believed that Czapski was Residences LP's agent, (ii) this belief was generated by Residences LP's affirmatively holding Czapski out as its agent or by

Residences LP's knowingly permitting Czapski to hold himself out as such, and (iii) Dixie justifiably relied on the representation of authority. *See Baptist Mem'l Hosp. Sys. v. Simpson*, 969 S.W.2d 945, 949 (Tex. 1998).

Based on these standards, we conclude that the evidence discussed in the preceding section also supports the deemed finding of Czapski's express or apparent authority to negotiate Riverdale's deal with Dixie that is the subject of Question 1.

Consequently, the evidence supports the jury's contract formation and breach findings against Riverdale and Dixie was entitled to judgment on its breach of contract claim.

### 6.  Residences LLC's Liability

Dixie argues that, as a matter of law, once the jury found that Residences LP was liable to Dixie, Residences LLC was also liable.[5]  We agree.

Residences LLC is Residences LP's general partner.  As such, Residences LLC is jointly and severally liable for the partnership debts. *Forney 921 Lot. Dev. Partners I, LP v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 272–73 (Tex. App.— Dallas 2011, pet denied); *see also* TEX. BUS. ORG. CODE § 153.152.  Therefore, Residences LLC and Residences LP are jointly and severally liable to Dixie for breach of contract.

Accordingly, we sustain the first part of Dixie's first issue.

---

[5] Riverdale does not address this argument.

Having concluded that Dixie is entitled to recover against Riverdale for contract breach, we now consider Dixie's attorneys' fees claim.

### 3. Attorney's Fees

#### a. General Principles

Texas follows the American Rule, which provides that litigants may recover attorneys' fees only if specifically provided for by statute or contract. *See Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). Dixie is not entitled to recover its attorneys' fees from Riverdale because no statute or contract term imposes liability on them for Dixie's attorneys' fees. Indeed, Dixie does not suggest that there a contract provision requiring Riverdale to pay Dixie's fees in this case. So we turn to the statutory prong.

Civil Practice and Remedies Code § 38.001 authorizes an attorneys' fees award for certain types of claims brought by a "person" against "an individual or corporation." *See* TEX. CIV. PRAC. & REM. CODE § 38.001. Thus, under § 38.001's plain language, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorneys' fees. *Top Cat Ready Mix, LLC v. Alliance Trucking*, No. 05-18-00175-CV, 2019 WL 275880, at *5 (Tex. App.—Dallas Jan. 22, 2019, no pet.) (mem. op.).

#### b. Riverdale's Trial Court Preservation Generally

Dixie concedes that attorney's fees are not ordinarily recoverable from entities that are not corporations, but it maintains that Riverdale waived its argument because

it didn't raise the issue in the trial court.  We disagree because Riverdale raised this issue in its motion to modify the judgment and for JNOV.  *See Steves Sash & Door Co., Inc. v. Seco*, 751 S.W.2d 473, 477 (Tex. 1988).

Likewise, we reject Dixie's additional arguments that the Riverdale entities needed to file (i) Rule 93 verified denials that they are corporations and thus not covered by § 38.001 or (ii) a Rule 94 affirmative defense raising the issue.

### c.      Rule 93

A Rule 93 verified denial of lack of capacity to be sued is required to deny a partnership's *existence* (but not to argue that a statue does not apply to an entity in its actual legal form).  *See* TEX. R. CIV. P. 93(5); *see also Ingram v. Deere*, 288 S.W.3d 886, 892–93 (Tex. 2009).  In other words, an affidavit is required to preserve a complaint that a party is not the type of entity a plaintiff alleges in his suit.  *See e.g., Washburn v. Krenek*, 684 S.W.2d 187, 191 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (failure to deny partnership status is an admission of partnership that cannot be controverted at trial).

Here, Dixie did not plead that the Riverdale defendants were corporations and it is undisputed that they are not.  Therefore, Rule 93 was not implicated.  *See Top Cat*, 2019 WL 275880, at *5.

Moreover, by its text, a Rule 93 verified denial is not necessary where the truth of the matter appears of record.  TEX. R. CIV. P. 93; *see also Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988).  Here, that the Riverdale defendants

–19–

are not corporations appears of record in Dixie's pleadings. Thus, Rule 93 did not apply.

### d. Rule 94

Dixie also argues that Riverdale failed to plead the § 38.001 "exemption" as an affirmative defense under Rule 94. *See* TEX. R. CIV. P. 94. We reject that argument because § 38.001's inapplicability to business organizations other than corporations is a matter of statutory coverage in the first instance and not exemption.

Rule 94 requires a party to plead affirmatively those affirmative defenses listed in the rule "and any other matter constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94; *Davis v. City of San Antonio*, 752 S.W.2d 518, 519 (Tex. 1988). Stated differently, an affirmative defense is by nature one of confession and avoidance and "does not seek to defend by merely denying the plaintiff's claims, but rather seeks to 'establish an independent reason why the plaintiff should not recover.'" *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996).

Here, Rule 94 does not apply because Riverdale is not within the class of parties to which the statute sweeps. *See Base-Seal, Inc. v. Jefferson Cty.*, 901 S.W.2d 783, 787-88 (Tex. App.—Beaumont 1995, writ denied) (§ 38.001 inapplicable because counties not within the class of covered entities). Because the statute on its face does not bring the Riverdale defendants within its scope in the first place, there was nothing for them to confess and avoid within Rule 94's reach.

Nonetheless, Dixie cites *County of El Paso v. Boy's Concessions, Inc.*, 772 S.W.2d 291, 293 (Tex. App.—El Paso 1989, no pet.) for the contrary premise that Riverdale had to plead their status as non-corporations as an affirmative defense. We reject our sister court's language to that effect. *Boys' Concessions'* reasoning is faulty because it characterized the county's argument in terms exemption from § 38.001, which implies that the county would be covered by the statute but for an exemption removing it from coverage. But that analysis is contrary to § 38.001's plain text.[6]

In this case, however, Riverdale raised the issue in the court below. In addition to raising the issue in a motion for directed verdict during trial, Riverdale also raised the issue when the court awarded breach of contract damages and attorney's fees on remand.[7] Under these circumstances, we cannot conclude the issue was waived. *See, e.g.*, *Rhodes v. Kelly*, No. 05-16-00888-CV, 2017 WL 2774452, at *14 (Tex. App.—Dallas June 27, 2017, pet. denied) (mem. op.) (party wishing to argue on appeal that a statute does not authorize an award of attorney's fees must preserve its complaint in the trial court).

We resolve the second part of Dixie's first issue against it.

---

[6] Dixie also cites *Chan v. Jade King, Inc.*, No. 01-00-00054-CV, 2000 WL 1538606, at * 1 (Tex. App.—Houston [1st Dist.] Oct. 19, 2000, no pet); *Fall Cty. v. Perkins & Cullum*, 798 S.W.2d 868, 872 (Tex. App.—Fort Worth 1990, no writ); and *Dickey v. McComb Dev. Co.*, 115 S.W.3d 42, 47 (Tex. App.—San Antonio 2003, no pet) as, "*see also*" support for its waiver argument. We are not persuaded by those cases.

[7] Specifically, Riverdale raised the issue in its Motion to Modify the Judgment and for Judgment Notwithstanding the Verdict.

**B.** **Second Issue:   Did the trial court err by denying Dixie's conversion claim?**

No, because Dixie's conversion claim rests on Dixie's lost bargained for consideration in the discounted payment contract.

### 1.    Background

Dixie's second issue, as presented in its opening brief, argues that the trial court erroneously rejected Dixie's conversion claim because: (i) *Dixie I* did not limit Dixie to only non-tort remedies and (ii) the evidence supports a recovery for converting money.

Riverdale's brief does not contest whether the evidence supports the jury's conversion finding.  Instead, it responded that (i) the economic loss rule prevents Dixie from recovering under its conversion claim and (ii) an action will not lie for converting money represented as a general debt.

Dixie's reply asserts that (i) the economic loss rule does not apply to intentional torts; (ii) Riverdale waived this argument because it was not pled or objected to at the charge conference; and (iii) the one satisfaction rule does not apply.

The jury found that by causing Dixie's check to be voided Residences LP converted Dixie's property:

**QUESTION 16**

In voiding, or causing the voiding of, the check payable to *Dixie Carpet Installations, Inc.* in the amount of $114,318.40, and using the funds to pay another party, did *Residences at Riverdale, LP* convert the property of *Dixie Carpet Installations, Inc.*?

A conversion means the wrongful exercise of dominion and control over another's property, or its proceeds, in denial of or inconsistent with its rights. A conversion may occur from the unauthorized and wrongful control, wrongful acquisition or wrongful withholding of the property, or its proceeds, of another which is to the exclusion of, or inconsistent with, another's ownership rights. Fraudulent intent or purpose is not required for conversion. Recovery is not barred by the Defendant's showing of good faith. Money may be the subject of conversion if it is a deposit accompanied by an agreement that it will be paid out for a specific purpose.

Answer "Yes" or "No"

Answer: ___YES___

We assume without deciding that (i) the charge correctly submitted Dixie's conversion claim; (ii) the evidence supports the jury's answer to that question; and (iii) Dixie could recover on its conversion claim unless the economic loss applies. Thus, the dispositive question is not whether the evidence supports the jury's answer; it is whether the economic loss rule limits Dixie's recovery to its lost bargained for contract consideration.

## 2. The Mandate

We begin with our mandate's scope. When an appellate court reverses a lower court's judgment and remands to the trial court, the trial court is authorized to take the actions necessary to give effect to the appellate court's opinion and mandate. *Goldman v. Olmstead*, No. 05-15-01470, 2016 WL 7163876, at *2 (Tex. App.—

Dallas 2016, no pet.) (mem. op.). When a case is remanded with specific instructions, the trial court is limited to complying with those instructions. *Id.*

In *Dixie I*, we said:

> The jury found in favor of Dixie on multiple, alternative theories of recovery. Riverdale has asked in its prayer for remand "for Dixie to elect a non-tort remedy." Accordingly, we remand the case to the trial court for Dixie to make a new election of remedies.

*Dixie I*, 2017 WL 2889276, at *8. Our mandate said, "we remand to the trial court for further proceedings consistent with this opinion."

Reading the opinion and mandate together, as we must, *see Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.), referring to Riverdale's requested relief did not limit Dixie to electing a non-tort remedy. Instead, Dixie was free to elect any of its remaining remedies.

We thus consider Dixie's other conversion arguments.

### 3. Preservation

Dixie cites *Equistar Chems. L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007) to argue that Riverdale waived the economic loss rule by not pleading it as an affirmative defense or objecting to the charge. We disagree because that rule is not an affirmative defense and Riverdale (twice) opposed Dixie's effort to obtain a conversion judgment because of the economic loss rule.

First, the economic loss rule is not an affirmative defense. *Id.*; *see also* 64 BAYLOR L. REV. 204, 208 (2012) (the economic loss rule is not an affirmative

defense that must be pled but instead refers to what is to be considered as the proper measure of damages in a case to which it applies).[8]

Second, Riverdale opposed Dixie's post-remand motion for judgment based on conversion by arguing that the economic loss rule prevented that tort recovery.[9]

Accordingly, Riverdale preserved its argument that the economic loss rule precludes a Dixie judgment based on conversion (and its attendant potential ability to also recover the punitive damages that the jury found). *See* TEX. R. APP. P. 33.1.

### 4. The Economic Loss Rule

According to Riverdale, Dixie's "injury is only the economic loss to the subject of a contract." Thus, Riverdale urges that Dixie cannot recover for conversion because its claim sounds in contract, not tort. We agree with Riverdale.

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *see also Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (same); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986) (same).

---

[8] Moreover, unlike this case, *Equistar* involved the economic loss rule in a products liability context. Although the case involved torts and warranty, the jury was only asked to find one damages amount for both tort and contract. The Texas Supreme Court concluded that Dresser's failure to object to the improper submission resulted in waiver of its challenge concerning the proper measure of damages. *Id*. at 868.

[9] Riverdale also opposed Dixie's pre-remand motion for judgment by arguing that the economic loss rule prevented Dixie's ability to recovery under any tort theory.

However, that rule does not prevent economic losses from being "recoverable under a variety of intentional tort theories absent a contractual obligation." *Eagle Oil & Gas Co. v. Shale Exploration, LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd). Further, "[e]ven if the matter in dispute is the subject of a contract, a party may elect a recovery in tort *if the duty breached stands independent from the contractual undertaking*, and the alleged damages are not solely the result of a bargained-for contractual benefit." *Id*. (citing *Chapman*, 445 S.W.3d at 718) (emphasis added).

Dixie argues that intentional torts such as conversion are excluded from the economic loss rule. Although the rule has been held inapplicable in certain cases involving intentional torts, the emphasis is not on the tort alleged per se, but whether the duty breached is independent from the underlying contractual undertaking and the harm suffered is not merely the lost contract economic benefit.[10] *See Chapman*, 445 S.W.3d at 718; *Stauffacher v. Coadum Capital Fund 1, LLC*, 344 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (economic loss rule applied to claims against joint venturer for contract and fiduciary duty breaches because, although there was evidence of a fiduciary breach, there was no evidence of how the

---

[10] The supreme court has listed several torts that the economic loss rule does not bar, including negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action. *See Sharyland,* 354 S.W.3d at 418–19. The key to these exclusions is whether the defendant owes the plaintiff a duty independent from the contractual duty. *See id.*

investment fund was damaged "specifically by" the joint venturer's fiduciary breach separate from his failure to comply with the joint-venture agreement).

For example, the rule does not apply if a person negligently performs a contract duty in a way that injures property or persons incidental to the contract work being done. *See Chapman*, 445 S.W.3d at 718–719 (plumber hired to install a hot water heater negligently flooded the house); *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex.1947) (heater repair performed so negligently that defendant burned down the house).

Similarly, the economic loss rule does not apply where the plaintiff is injured by the defendant's mal-conduct independent of the defendant performing a contract obligation. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (fraud in the inducement).

On the other hand, the rule bars tort or statutory recovery where the defendant negligently performed or failed to perform contract duty resulting in the plaintiff losing the benefit of the promised contract consideration. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12. 13-14 (Tex. 1996) (DTPA inapplicable to claim that publisher omitted promised advertising); *Southwestern Bell Telephone Co. v. DeLanney* 809 S.W.2d 493, 495 (Tex. 1998) (negligent failure to publish promised advertising sounds only in contract); *Jim Walters Homes, Inc. v. Reed*, 617, 618 (Tex. 1986) (negligent poor home construction sounds only in contract).

Dixie cites *Cass v. Stephens*, 156 S.W.3d 38, 69 (Tex. App.—El Paso 2004, pet denied) as an example of where the economic loss rule did not apply to a conversion claim. But the *Cass* conversion, unlike the present case, was incidental to the agreed contact performance.[11] We are also unpersuaded by Dixie's reliance on *MSMTBR, Inc. v. Mid-Atlantic Fin. Co., Inc.*, No. 01-12-00501-CV, 2014 WL 3697736, at *4 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

We next consider whether the rule applies to Dixie's conversion claim.

### 5. Dixie's Contract Breach Injury and Loss

Our analysis of whether Dixie may recover for conversion distills to whether Dixie's conversion claim sounds in contract or in tort.

Courts consider two factors to determine whether a cause of action sounds in contract or tort: (i) the source of the duty giving rise to the injury and (ii) the nature of the injury itself. *DeLanney*, 809 S.W.2d at 495.

Contractual duties are those that arise solely from the agreement between the parties. *Id.* at 494. On the other hand, tort duties are "imposed by law—apart from

---

[11] This *Cass* excerpt illustrates the point:

> Frank and Michael's unlawful appropriation of the jointly-owned equipment, for the use and benefit of their solely owned wells, breached an obligation that exists independent of the JOAs. Just as the unauthorized removal by a third party constitutes theft, the unauthorized appropriation of the jointly-owned equipment, here, constitutes conversion. The conduct breaches an obligation which exists outside the contract, and had nothing to do with the JOAs. As a consequence, we conclude that Frank and Michael breached a duty imposed by law.

156 S.W.3d at 69.

and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *Id.*

Here, the jury found that Riverdale converted Dixie's property by voiding the check made payable to Dixie. But that check was the vehicle by which Riverdale was going to perform its contract duty to pay Dixie the promised discounted sum. Thus, Dixie's conversion claim amounts to Riverdale causing Dixie to lose the payment Riverdale owed Dixie under the contract the jury found in response to Question 1. Stated differently, Dixie's conversion claim rests on the fact that Riverdale's conduct deprived Dixie from receiving its bargained for consideration in exchange for Dixie's agreement to surrender its lien against Riverdale's property. Thus, Dixie's claim sounds in contract and Dixie cannot recover damages for conversion arising from the contract's breach.[12]

Accordingly, we resolve Dixie's second issue against it.

## C. Quantum Meruit

Because Dixie is entitled to recover from Riverdale for breaching the Riverdale-Dixie contract, we need not consider Dixie's quantum meruit argument. *See* TEX. R. APP. P. 47.1; *see also In re Kellogg Brown & Root, Inc.* 166 S.W.3d 732,

---

[12] A party breaches its contract when it prevents the other party from receiving its promised contract benefits. *See TLC Hospitality, LLC v. Pillar Income Asset Mgmt.. Inc.,* 570 S.W.3d 749, 765 (Tex. App.—Tyler 2018, pet. denied) (contract breach by making other party's performance impossible); *Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.*, 899 S.W.2d 666, 670 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (same); *Marvin v. Rogers,* 115 S.W. 863, 865–66 (Tex. App.—Dallas 1909, no writ); *Sheldon v. Caples*, 26 S.W. 330, 331 (Tex. App.—El Paso 1894, writ ref'd).

740 (Tex. 2005) (party may generally not recover under quantum meruit when there is a valid contract).

**D.    One Satisfaction Rule**

In a footnote Riverdale argues that Dixie's judgment against Nations, which is to compensate Dixie for the unpaid for flooring, and the one satisfaction rule combine to negate Dixie's right to recover from Riverdale at all.

Riverdale is correct that Dixie can recover economically only once for its injury, not getting paid for its flooring, but we reject Riverdale's premise that the one satisfaction rule precludes a Dixie judgment against Riverdale.  Instead, the rule means that Riverdale is entitled to credits against that judgment for any payments Dixie receives regarding its judgment against Nations that compensate Dixie for its unpaid for flooring.  *See Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 106-09, 111-13 (Tex. 2018) (allowing settlement credits in a contract-based case involving numerous parties and numerous legal theories).

### III.   Conclusion

We deny Dixie's motion for leave to file a post-argument letter brief as moot.

We conclude that Dixie is entitled to recover for breach of contract but may not recover attorney's fees from Riverdale.  We resolve Dixie's remaining issues against it.

Accordingly, we (i) reverse the trial court's take-nothing judgment against Dixie; (ii) render judgment for Dixie and against Residences LP and Residences

–30–

LLC, jointly and severally, for $114,318.40 plus pre and post judgment interest as allowed by law; and (iii) remand the case to the trial court for further proceedings consistent with this opinion.

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

181479F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DIXIE CARPET INSTALLATIONS, INC., Appellant

No. 05-18-01479-CV        V.

RESIDENCES AT RIVERDALE, LP AND RESIDENCES AT RIVERDALE GP, LLC, Appellees

On Appeal from the 199th Judicial District Court, Collin County, Texas Trial Court Cause No. 199-04903-2012.
Opinion delivered by Justice Whitehill. Justices Bridges and Nowell participating.

In accordance with this Court's opinion of this date, the trial court's take-nothing judgment against **DIXIE CARPET INSTALATIONS, INC**. is **REVERSED, judgment is RENDERED for DIXIE CARPET INSTALATIONS, INC**. for $114,318.40 plus pre and post judgment interest as allowed by law against **RESIDENCE AT RIVERDALE LP AND RESIDENCES AT RIVERDALE, GP, LLC,** jointly and severally, and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant DIXIE CARPET INSTALLATIONS, INC. recover its costs of this appeal from appellee RESIDENCES AT RIVERDALE, LP AND RESIDENCES AT RIVERDALE GP, LLC.

Judgment entered April 1, 2020.